THOMAS HENRY FULLER *v.* STATE OF INDIANA.

[No. 1072S145. Filed December 12, 1973.]

*Robert Howard Brown,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This appeal is from a conviction for first degree murder. On January 21, 1972, the Defendant-Appellant shot and killed one Eddie Watson. Defendant-Appellant had been drinking heavily that day. About sunset, he went to the home of the victim's mother. Several people congregated there and soon drove to a nearby tavern where Watson was drinking with some of his friends. As the evening wore on, Watson and the Defendant-Appellant got into an argument. The group returned to the home of Watson's mother. The dispute intensified. Watson smashed a wine bottle over the Defendant-Appellant's head. Defendant-Appellant left and went to his own home, sent his wife to his uncle's to borrow a shotgun, and when she returned with the gun he set out in search of Watson. Fuller found Watson at the house of a friend. Fuller waited; when Watson started to leave the house, Fuller shot him.

Appellant's allegations of error revolve around instructions which the Trial Judge either gave over the objections of Appellant or instructions which the Appellant tendered but the Trial Judge refused. The State suggests that Appellant has waived all alleged errors by his failure in his brief to set out

verbatim the objections he made to those rulings of the Trial Judge. Rule AP. 8.3. However, without condoning such a departure from our rules, we note that appellant has cited the transcript pages where the objections could be found and in substance repeated these in his brief. The Appellee has failed to show wherein there is any mistake in the recital of the objections. Were there mistakes or errors in the recital of objections when not set out verbatim, we would be inclined to enforce the rule against the Appellant.

## I.

The Trial Court gave State's Instruction Number Two over the objection of the Appellant.

> "It is necessary that every material element of the crime charged against the accused should be proved by the evidence beyond a reasonable doubt but *it is not necessary that all incidental or subsidiary facts should be proved beyond a reasonable doubt.* Evidence is not considered in fragmentary parts as though each fact and circumstance stood apart from the others; but the entire evidence is to be considered and the weight of the testimony to be determined from the whole body of the evidence. A circumstance considered apart from the other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence, as detailed by the witness. Acts considered apart from other evidence may appear innocent, but when considered with the other evidence may import guilt as well as innocence." (emphasis added)

Appellant contends that because in the case of *White* v. *State* (1955), 234 Ind. 209, 125 N. E. 2d 705, the phrase "subsidiary evidence" in in instruction was held to be the cause of that instruction's prejudicial nature, the instruction in the instant case must also be prejudicial. However, Appellant has wrenched the word "subsidiary" from its context. The full instruction in *White, supra,* reads as follows:

> "The Court instructs you, Gentlemen of the Jury, that the law which clothes every person accused of crime with the presumption of innocence and imposes upon the State the burden of establishing his guilt beyond a reasonable

doubt is not intended to aid any one who is in fact guilty of crime to escape, but it is a humane provision of the law, intended so far as human agencies can, to guard against the danger of any innocent person being unjustly punished. And by a *reasonable doubt* is not meant a whim or captious or speculative doubt, but it *must arise from the evidence relating to some material fact or facts charged in the affidavit and not spring from mere subsidiary evidence.* Such doubt may also arise from the absence of evidence as to material matters."

It is apparent that the error in the *White* instruction is, as that Court said, that under such an instruction the jury is

[1] allowed to put aside its "reasonable doubt" if that doubt springs from "subsidiary evidence." The correct rule is that all properly admitted evidence is relevant to the issue of "reasonable doubt." The important issue is whether or not the jury has a "reasonable doubt," not the source of that doubt. In the instant case, the Trial Court did not rule out "subsidiary facts" as a possible source of reasonable doubt, but merely cautioned the jury to consider the weight of the totality of the evidence in arriving at the decision as to whether or not it had a reasonable doubt about any of the material elements of the crime charged.

Appellant further contends that the last sentence of the given instruction is highly prejudicial because the "jury might believe they could disregard evidence importing innocence and only consider evidence that supplemented any implications of guilt." Since Appellant cites no case nor offers any supporting evidence or reasoning for this contention, we can only say that we disagree. Appellant offered as a substitute his Instruction Number Twenty which reversed the emphasis of the last sentence:

"A circumstance when considered completely apart from the other evidence may indicate guilt; but when viewed in connection with all of the other evidence and circumstances that circumstance may import innocence as well as guilt."

The given instruction's language is not to be commended, yet since in that instruction and in other instructions the Court

sufficiently emphasized the "reasonable doubt" standard, we do not believe that the stylistic emphasis pointed out by Appellant constitutes reversible error.

Appellant's final objection to State's Instruction Number Two is that the material allegations of the indictment were not there set out. Appellant concedes that *Loftis* v. *State* (1971), 256 Ind. 417, 269 N. E. 2d 746, permits the material allegations to be set forth in instructions separate from the one requiring proof beyond reasonable doubt of those allegations, and Appellant further concedes that such procedure was followed in the instant case. He suggests, however, that "these instructions were so attenuated in time and space that said State's instruction number two was necessarily prejudicial to the defendant appellant." The *Loftis* case does not require any particular order of instructions. Moreover, Appellant does not specifically show that the various instructions were "attenuated," nor does he attempt to demonstrate that such "attenuation" would be prejudicial.

Appellant also objected to the giving of the State's Instruction Number Five:

"The Constitution of this State makes the jury the judges of the law as well as of the facts. But this does not mean that the jurors may wilfully and arbitrarily disregard the law, nor that they make and judge the law as they think it should be in any particular case. It means that the jurors under their oath should honestly, justly and impartially judge the law as it exists and as it is found on the Statutes of our State in each particular case. It does not mean that the jurors shall so judge the law in any case as to make it null and void and of no force; but that they shall so judge the law as to give them all a fair and impartial interpretation to the end that each and every law in each and every case may be fairly and honestly *enforced.* The facts should be found and judge by the jury from a careful consideration of all the evidence given in the case, and under your oath you have no right to arbitrarily disregard either the law or the facts in the case without just cause, and after a fair and impartial consideration of both." (emphasis added)

Appellant's objection is that the word "enforced" suggests to a juror that "he has a duty to blindly enforce the law." Appellant cites no case and gives no data to support such a supposition. We find the contention without merit.

Appellant also objected to the giving of State's Instruction Number Thirteen:

> "The Court instructs you that frenzy solely from the passions of anger and revenge, no matter how furious, is not insanity. A person with ordinary willpower, which is unimpaired by disease, is required by law to govern and control his passions. If he yields to wicked passions of anger and revenge, and purposely and with premeditated malice, kills another, he cannot escape the penalty prescribed by law, upon the ground of mental incapacity. That state of mind caused by wicked and ungovernable passions of anger and revenge, resulting not from mental lesion, but solely from evil passions of anger and revenge, constitutes that mental condition which the law abhors, and to which the term malice is applied."

Appellant's first ground for objection is that the words "disease" and "lesion" are technical in nature and since unaccompanied by definition the jury "is left to grapple with medical and legal terms they could not be expected to understand or comprehend" all to the prejudice of the Defendant-Appellant. The short answer to this objection is that the words are not technical. *Webster's Seventh New Collegiate Dictionary.* In other words, we do not think that the ordinary juror would be confused or misled by the words or by the instruction considered as a whole. It merely attempted a description of the meaning of malice.

Appellant's further objection to this instruction is that it does not adequately state the "irresistible impulse" rule. However, the following instruction, State's Instruction Number Twelve,* was also given by the Trial Court, and it adequately explains the "irresistible impulse" concept:

---

\* We note that the record specifically shows that the State's tendered Instruction Number Twelve was given. However, on the face of that Instruction appears the handwritten word "withdraw", which we observe is not the same as "withdrawn." Regardless of the inter-

". . . Furthermore, you are instructed that under the law of this State a person may have sufficient mental capacity to know right from wrong and to be able to comprehend the nature and consequences of the act, and yet not be criminally responsible for his actions; for an irresistible impulse of a person accused is a lawful excuse for the commission of an act, otherwise a crime, where the person committing it, though he is capable of knowing right from wrong, lacks in consequence of a diseased mind, the will power to resist an impulse to commit crime."

## II.

We come now to the consideration of those instructions tendered by Appellant but refused by the court. At this point we call attention to the rule of this Court ▆ (CR. 8) which provides in substance that no error can be claimed upon the refusal of a trial court to give a tendered instruction in excess of the number fixed by the rule, ten (10), or by court order, whichever number is greater. The policy and reason for such a rule is obvious as appears in this case. The Appellant tendered, according to the record, a total of twenty-four (24) instructions for the Court's review and consideration. Appellant points out no rule or order of the Court permitting such an excessive number of tendered instructions. We, therefore, will give consideration to only the first ten. Appellant asked that the jury be given the following Instruction Number Ten:

"The defendant in a criminal case is not required to satisfy the jury of the existence of any fact, which if true, would be a complete defense. It is sufficient for acquittal if there arises into the minds of the jury, either from the evidence or from the lack of evidence, a reasonable doubt of the existence of any such fact."

We think the Court's Instruction Number Three more than adequately states the same concept:

"I instruct you that there is no duty resting on the defendant to prove or otherwise establish his innocence.

pretation given to such a handwritten notation, we are obliged to follow the official record as to which Instructions were in fact given by the Court.

Before there can be a conviction of the defendant, the State must prove all the material elements of the alleged offense. If, from the evidence introduced, or from lack of evidence, you entertain a reasonable doubt as to whether or not the defendant committed said offense, you should acquit the defendant."

It is not error to refuse to give an instruction the substance of which is covered by another instruction which is given. *Hash* v. *State* (1972), 258 Ind. 692, 284 N. E. 2d 770. *Maxey* v. *State* (1969), 251 Ind. 645, 244 N. E. 2d 650; *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 316.

Appellant offered a number of instructions on the issue of insanity. The Court's refusal to give these tendered instructions is alleged to be reversible error. Appellant's tendered Instruction Number Four reads:

"Where the defendant raises the question of his sanity and there is some evidence thereon, the State must prove beyond a reasonable doubt not only that the defendant could know and comprehend the consequences of his act but also that the defendant has sufficient will power to control his impulse to commit the act charged. If the State fails to prove either requirement beyond a reasonable doubt, there is a failure to proof on such issue."

The Trial Court gave instead State's Instruction Number Ten which reads as follows:

"You are hereby instructed that under the law of this State a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. If the State fails to prove this requirement beyond a reasonable doubt, then there is a failure of proof on this issue."

The Court also gave its own Instruction Number Two:

"As previously stated, the defendant, Thomas Henry Fuller, has filed Special Answer of insanity and upon introduction of some evidence on the subject, the burden is placed upon the State to prove the sanity of the defendant, Fuller, beyond a reasonable doubt; and if the jury entertains a rea-

sonable doubt as to the sanity of the accused at the time of the alleged commission of the offense, you may under the laws of the State of Indiana return a verdict of not guilty."

State's Instruction Number Ten is an accurate statement of the present rule on insanity. *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429. The *Hill* case was this Court's most recent discussion of the insanity test. The Court's Instruction Number Two is adequate as to the burden of proof issue.

Appellant next complains of the Trial Court's refusal to give his tendered Instruction Number Six:

"If you find from the evidence that even if the defendant was capable of knowing that it was wrong to inflict bodily harm upon another person, but owing to a mental derangement the defendant was incapable of controlling the impulse to commit such an act, then he cannot be convicted."

We have previously discussed instructions given by the Court which adequately covered the "irresistible impulse" issue. Therefore, it was not error to refuse to give this redundant instruction.

The last of Appellant's properly tendered instructions which the Trial Court refused was his Instruction Number Eight:

"One's intelligence is certainly a factor to be considered when determining whether the defendant had the requisite capacity to conform his actions to the requirement of the law. Such deficiency would have to be severe to qualify."

Appellant's reason for thinking that this tendered instruction should have been given is that the language itself can be found in the *Hill* opinion, *supra*, 252 Ind. at 611. However, the *Hill* opinion merely conceded that intelligence is a factor for the jury to consider in determining whether a defendant had the capacity to conform his actions to the requirements of the law; nowhere does *Hill*, *supra*, say that such an instruction is mandatory. As we have seen, in other instructions the Trial Court in this case correctly stated the insanity rule from *Hill*, *supra*. Moreover, the only testimony on the matter of intelligence indicated that Appellant's I.Q. was around

90, and in *Hill, supra,* an I.Q. of 75 was not considered low enough to create the possibility that the defendant had a mental defect of such a nature as to excuse his criminal responsibility.

For all of the foregoing reasons, the appeal is denied, and the judgment of the Trial Court is affirmed.

All justices concur.

NOTE.—Reported in 304 N. E. 2d 305.