LARRY CADE *v.* STATE OF INDIANA.

[No. 575S132. Filed June 4, 1976. Rehearing denied
August 17, 1976.]

Douglas D. Church, Church, Roberts & Beerbower, of Noblesville, for appellant.

Theodore L. Sendak, Attorney General, Walter F. Lockhart, Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Larry Cade, was convicted on April 10, 1974, of first degree murder, homicide in the perpetration of a burglary. Sentenced to life imprisonment on May 6, 1974, the Appellant filed his Motion to Correct Errors on July 3, 1974. The Honorable V. Sue Shields, the trial judge, disqualified herself from further proceedings regarding the Appellant on July 22, 1974. Upon motion by the Appellant, jurisdiction was reassumed by the trial court on September 16, 1974. After a hearing and continuances requested by the Appellant, the Appellant's Motion to Correct Errors was denied on March 3, 1975. This appeal has been

kept viable since that date by appropriate extensions of time requested by the Appellant and granted by this court.

The evidence at trial revealed that on the evening of January 5, 1973, the Appellant met with one Enos Adams and one Walter Banks on North College Avenue in Indianapolis, Indiana. The three of them walked, looking for houses to burglarize, and found a darkened house on North Delaware Avenue. After knocking on the doors and looking in the windows of the home, the three men proceeded to the rear. The Appellant broke down the rear door of the house after unsuccessful attempts to do so by his companions.

The Appellant remained near the rear door of the house to act as a lookout and to remove from the home items brought to him by Adams and Banks. Adams had left Banks upstairs when he heard someone approaching the front of the house. Adams shouted a warning to Banks and ran to the back of the house. He ran into the Appellant and the two of them fled through the back yard.

The owner of the residence, George Hosmer, was entering his front door as he spotted Adams running down a hall. He stepped back from the door as he heard something outside. His wife, Lucille, went into the dining room and dialed the police emergency number. Four shots were heard. One struck Hosmer in a rib. Others struck and killed his wife.

Banks ran after and caught up with Adams and the Appellant. Banks asked Adams to keep his gun for him and Adams took the gun and went home. Later, Adams gave the gun to Banks' brother. The Appellant and Banks went to the homes of their girlfriends.

Police arrived at the scene of the crime and found items believed to be objects of the burglary at the rear of the residence. Latent fingerprints identified as those of the Appellant, Adams, and Banks were found in the home. Two spent bullets were found in the house. Another was recovered from the body of Mrs. Hosmer. The Appellant was arrested at his home in the early morning hours of January 7, 1973.

## I.

The first allegation of error raised by the Appellant is that the evidence was insufficient to support the verdict of the jury. This is premised upon three contentions:

"1. That there was no evidence from which knowledge could be imputed to the Defendant of the instrumentality which ultimately caused the homicide; and,

2. That the evidence was uncontradicted that the Defendant had initiated an effort to abandon the scene of the crime; and

3. That there was no evidence that the Defendant encouraged the commission of *the homicide.*"

The evidence is far from uncontradicted on the question of whether the Appellant attempted to abandon the scene of the crime. Rather, the evidence shows that the Appellant was attempting to flee, not abandon, the scene of the crime. Beyond this, we need not look to the Appellant's knowledge or participation in the actual shooting.

"A person may be responsible for murder if he either actually commits the offense or does some act which forms a part thereof, or directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof. Where a killing is murder under statutory provisions because it was committed in the commission of, or attempt to perpetrate, one of the crimes specified in the provisions, all participants in the crime committed or attempted are deemed equally guilty of the murder, regardless of which participant actually killed the deceased." 15 I.L.E. *Homicide* § 18 at 304 (1959).

The evidence at trial established that the Appellant actively participated in an attempted burglary of the Hosmer home. He broke down the back door of the home. His fingerprints were found inside the house. He met with his confederates after the crime and aided in concealing the murder weapon.

"It is well-established that this court, in determining the sufficiency of evidence, does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence.

A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) [264] Ind. [14], 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E. 2d 538." *Matthew* v. *State,* (1975) 263 Ind. 672, 337 N.E.2d 821 at 822. The evidence in this case was sufficient to support the jury's verdict.

## II.

Raised as the second contention of error is that the Appellant was denied the right to effective assistance of counsel. During the course of the proceedings against him, the Appellant was represented by three different attorneys. The Appellant does not suggest that any of these counsel were incompetent. As stated in the brief of the Appellant, the "issue raised is instead whether or not someone as in the case of this Appellant, can receive effective assistance of counsel where three or more attorneys representing the accused at various and critical states of the proceedings operating on separate theories and varying degrees of zealousness can ultimately result in effective representation."

We need not fully develop here the extent of a defendant's right to counsel. A defendant is, in short, entitled to consult with counsel in every stage of proceedings against him. *Batchelor* v. *State,* (1920) 189 Ind. 69, 125 N.E.2d 773. It requires that counsel have an adequate opportunity to prepare for a "zealous and active" defense. *Lloyd* v. *State,* (1960) 241 Ind. 192, 170 N.E.2d 904. We do not believe that the Appellant has presented facts which show he was not afforded this right.

Indeed, the Appellant has presented this court with few facts upon which to base any resolution of this issue. It is pointed out that the Appellant's third attorney was not appointed until some two and one-half weeks prior to trial. It is also conceded that a motion for continuance was granted and that the trial commenced forty-five days after the appointment. No further motions for continuance were made.

No objections regarding the assistance of counsel were made until the issue was raised in the Appellant's Motion to Correct Errors.

It is noted that the Appellant, as a pauper, had no choice in the appointment of his counsel. And it is pointed out that the Appellant's second attorney served for almost a year before being replaced because of a possible conflict of interest. The *possible* resulting problems in discovery, pre-trial motions, and trial preparation are discussed. But this is all speculation. Nowhere is it asserted that there were, in fact, any problems in any of these areas.

We are asked to presume "that a nineteen (19) year old black man, untrained in the law, without financial means to secure private counsel, required to accept services of three separate lawyers at crucial stages of the proceedings cannot have effective assistance of counsel." We cannot assume this as a matter of general law. We are presented with facts insufficient to give rise to such a presumption in this case.

### III.

The Appellant entered his plea of not guilty on February 14, 1973, before Criminal Court I of Marion County. On February 23, the Appellant moved for a change of venue from the county. This motion was sustained and on February 27, 1973, the case was venued to Hamilton County Superior Court by agreement of the parties. On November 15, 1973, the Appellant moved for a change of venue from the judge. After a hearing in which evidence was presented and arguments of counsel were heard, this motion was denied on November 16. The Appellant urges that this denial was erroneous.

The Appellant's verified motion for change of venue from the judge gave three grounds for the proposed change. First asserted was that an inmate of the Hamilton County Jail had told the Appellant that his trial judge was prejudiced against blacks. Second, it was asserted that another inmate had told the Appellant that his judge was prejudiced against

his case. Third, it was contended that the denial by the trial judge of the Appellant's motion for a separate trial showed an apparent feeling that the Appellant should receive the same "punishment and findings" as his co-defendant, Walter Banks.

Pursuant to Ind. R. Crim. P. 12, which governs application for change of venue from a judge, "the ruling of the court may be reviewed only for abuse of discretion." The Appellant contends that discretion was abused here because his motion established a prima facie case and no counter affidavits were filed. We cannot agree. The affidavit consisted chiefly of unsupported hearsay. A hearing was held by the trial court in which evidence and the arguments of counsel were presented. "It is of course within the discretion of the trial court to question the credibility of an application whose veracity has been attacked by the prosecution. It may also be within the courts (sic) discretion to question the credibility of an uncontroverted application, but this should be done only after affording the petitioner a hearing or other opportunity to support his application with additional evidence." *Hanrahan* v. *State,* (1968) 251 Ind. 325 at 334, 241 N.E.2d 143 at 148.

It is incumbent upon the Appellant to show a clear abuse of discretion by the trial court. The allegations presented by the Appellant, standing alone and in the face of a hearing in which evidence and arguments were presented, fail to meet this burden.

## IV.

The Appellant's fourth contention is that the trial court erred in denying a motion for discharge made by the Appellant pursuant to Ind. R. Crim. P. 4. In *State ex rel. Banks* v. *Hamilton Superior Court,* (1973) 261 Ind. 426, 304 N.E.2d 776 we concluded that this motion to discharge was properly denied due to acts of delay chargeable to the Appellant. This motion was based on the "six month rule" of Ind. R. Crim. P. 4(A). The Appellant now

asks us to find error on the basis of Ind. R. Crim. P. 4(B). Since this was not the grounds of his motion for discharge, he has waived such a challenge. The Appellant submits that his motion "would substantiate a basis for a finding" under Ind. R. Crim. P. 4(B). It was, however, the six month period which was brought to the trial court's attention, and it was this issue which was previously brought before this court.

## V.

Following voir dire of prospective jurors the Appellant entered a motion to strike the entire panel on the grounds that it did not meet constitutional standards of impartiality. This motion was denied. The Appellant contends this denial was erroneous. We find no merit in this contention.

The Appellant supports his argument by pointing out that only one of the two hundred veniremen called to serve in this trial was black. It is maintained that a special venire based upon the racial composition of Marion County should have been drawn to insure that the Appellant would be tried by a jury of his peers. No allegation of systematic exclusion is offered here except by inference. The argument also asks us to draw inferences from the fact that the one black venireman called was excused because he was hard of hearing.

"The right to an impartial trial precludes systematic and intentional exclusion of any particular class of persons. It does not necessarily mean that every jury, even though there is no intentional exclusion, must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community." *Shuemak* v. *State,* (1970) 254 Ind. 117 at 120, 258 N.E.2d 158 at 159. Accordingly, the Appellant's jury was not required to be mathematically representative of Hamilton County, where the trial was venued by agreement of the parties, let alone Marion County.

A defendant has the initial burden of demonstrating that purposeful discrimination exists. *Sanders* v. *State,* (1972)

259 Ind. 43, 284 N.E.2d 751. The argument here presents evidence insufficient to meet this burden.

## VI.

The Appellant also contends that the trial court erred in failing to grant a defense motion for mistrial. This motion was made at 2:50 p.m., April 10, 1974. The jury had been deliberating since 4:30 p.m. the previous day, and the motion was based on the failure of the jury to reach a verdict. It was during the course of arguments on this motion at about 3:12 p.m. on April 10, that the jury indicated that it had reached a verdict. The trial court overruled the motion and permitted the jury to return its verdict.

The length of time permitted for deliberation by a jury is largely within the discretion of a trial court. *Ayad* v. *State*, (1970) 254 Ind. 430, 261 N.E.2d 68; *Walker* v. *State*, (1965) 246 Ind. 386, 204 N.E.2d 850. The trial court did not abuse its discretion in this case.

While the jury did indeed deliberate for a long period of time, it at no time indicated that it would not be able to reach a verdict. Evidence at the hearing before the trial court indicated that regular meals were provided for the jury and that the jurors rested every hour. We do not believe it can be said that the jury was coerced into reaching its verdict.

## VII.

The next issue presented in this appeal concerns one of the jurors serving at the Appellant's trial. On April 15, 1974, some five days after the return of the jury's verdict, this woman juror came to the trial judge and reported that following the first day of the presentation of evidence in the Appellant's trial she had been assaulted by two black men as she drove home. They indicated to her that the assault was motivated solely by the fact that the Appellant was also black. This juror indicated that she was coming forth with this story out of concern for the safety of jurors in other cases.

The trial judge asked whether this story had been told to the other members of the Appellant's jury. The juror responded that she had not done so because she did not want it to influence their deliberations. In fact, she reported that she told no one of the beating, not even her husband. She said she had been treated by her family physician on the Friday following the beating. The trial judge proceeded to contact various police agencies for assistance in investigating the incident.

This issue is complicated by evidence presented at the hearing on the Appellant's Motion to Correct Errors which cast doubt on whether this beating actually took place and which indicated that the juror may have suffered from psychological problems. The Appellant maintains that, if the beating took place, the failure of the juror to report it amounted to juror misconduct. This, however, cannot be said to be the event prejudicial to the Appellant. Rather, what would be prejudicial, if anything, is the partiality which would result from the beating (if it took place), or from the juror's mental condition (whether or not the beating took place).

We do not find reversible error here based upon the facts now before us. "Misbehavior or irregularity on the part of a juror must—in order to warrant a new trial—be gross and it must be shown to have probably injured the accused." *Gann* v. *State,* (1975) 263 Ind. 297, 330 N.E.2d 88 at 91. The juror in question here indicated her impartiality and that of her fellow jurors by declaring to the trial judge that she had not told the jury about the incident because she did not want it to influence the deliberations. After delivering the verdict, each of the jurors was polled by the trial court and asked if he or she reached the verdict independently. Each juror replied affirmatively. The evidence justifying reversal of the trial court's determination of this issue is insufficient to permit us to do so.

## VIII.

The Appellant's remaining contentions concern instructions either given or rejected by the trial court. It is asserted that Defendant's Tendered Final Instruction No. 5, concerning the burden of proof placed on the State to prove each material allegation of the indictment, was erroneously refused. The jury was adequately instructed to this effect in final instructions No. 8 and No. 9 of the trial court. "It is not error to refuse to give an instruction the substance of which is covered by another instruction which is given." *Fuller* v. *State,* (1973) 261 Ind. 376 at 383, 304 N.E.2d 305 at 310.

The Appellant also urges error in the trial court's refusal to give Defendant's Tendered Final Instruction No. 6. This instruction defined the crime of manslaughter. It is contended that manslaughter is a lesser included offense of the felony murder charge of which the Appellant was convicted and should have been presented to the jury. This court has recognized that a jury may find a defendant charged with felony murder guilty of a collateral offense under appropriate facts. *Whitten* v. *State,* (1975) 263 Ind. 407, 333 N.E.2d 86; *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351. Such facts do not present themselves here.

All of the evidence presented to the jury in this case was that the Appellant and his confederates committed the acts of burglary and murder in the perpetration of burglary. Either the Appellant was guilty of this or he was not. "For the trial court to have instructed the jury that it could find the Defendant not guilty as charged but guilty of . . . a lesser included offense, would have been to suggest to them a compromise verdict. Although compromise verdicts doubtlessly are often forthcoming, they are not sanctioned in law and certainly should not be court induced." *Hester* v. *State, supra* at 354.

The trial court also refused to give Defendant's Tendered Instruction No. 4, which defined "accomplice." Such defini-

tion was adequately carried out in the trial court's final instruction No. 15. Defendant's Tendered Instruction No. 9, discussing the burden of proof placed on the State, was adequately covered in instructions Nos. 8, 9, 10, 11, 17 and 25 of the trial court. We find no error in the trial court's refusal to give these instructions tendered by the Appellant. *Fuller* v. *State, supra.*

It is finally maintained that the trial court erred in giving its final instruction No. 16 over the objection of the Appellant. That instruction reads:

> "You are instructed that when the killing of a human being is accomplished in the perpetration of first degree burglary, such killing is first degree murder, even though there is no actual purpose or intent to kill."

This is a correct statement of the law. *Jones* v. *State,* (1964) 244 Ind. 682, 195 N.E.2d 460, *cert. denied,* (1972) 408 U.S. 927, 92 S.Ct. 2511, 33 L.Ed.2d 339. The Appellant contends, however, that this instruction was prejudicially repetitious. In doing so, he does not refer us to any other instructions other than to say that the trial court instructed the jury on the elements of "felony murder." We can find no error on this basis.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 348 N.E.2d 394.

### ON PETITION FOR REHEARING

ARTERBURN, J.—The Appellant, Larry Cade, has filed a petition for rehearing which asserts that our original opinion contained two misstatements of the facts. In fairness to the Appellant, we now look to these claims of factual error.

1. The Appellant cites as the first misstatement the following: "Latent fingerprints identified as those of the Appellant, Adams, and Banks were found in the home." The Appellant contends that there is no evidence to this effect

in the record, though he concedes that a palm print was found "along the wall immediately inside the door jamb." The Appellee's brief goes into great detail about fingerprints and directs our attention to testimony in the record that a latent fingerprint of the Appellant was found on a kitchen wall of the Hosmer residence. Another fingerprint of the Appellant was found on the outside of the kitchen door. The Appellant accepted the State's statement of the facts in his reply brief. Our review of the record reveals that there was no misstatement of the facts here in our opinion.

2. Quoted as the second alleged misstatement is the following: "He [the Appellant] met with his confederates after the crime and aided in concealing the murder weapon." This statement was based upon the facts that the Appellant saw his confederate arrive with the gun from the scene of the crime, participated in a discussion of the shooting, saw one of his confederates give the gun to the other confederate, and aided in the concealment through his knowledge and subsequent silence. The statement in the opinion, if incorrect, is of minor importance and has no significant effect on the outcome of the case.

The other issues raised in the petition were considered and properly disposed of in our opinion. The petition for rehearing is denied.

All Justices concur.

NOTE.—Reported at 352 N.E.2d 473.