Robert Dennis SMITH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 477S256.

Supreme Court of Indiana.

Dec. 14, 1979.

John F. Hoehner, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of first degree murder and sentenced to life imprisonment. On appeal, he raises the following issues:

(1) Whether the trial court erred in refusing to instruct the jury regarding the law of irresistible impulse.

(2) Whether sufficient foundation was established for the admission of two video-taped recordings of defendant's confession.

(3) Whether the trial court erred in admitting Defendant's oral confession.

(4) Whether there was sufficient evidence that Defendant was competent to stand trial.

(5) Whether the test for insanity should be modified by deletion of the "caveat paragraph".

On November 29, 1975, the body of Mrs. Ellen Johnson was discovered, in her Porter County residence, lying on the kitchen floor in a large pool of blood, her clothing in disarray. A small paring-knife was found on the victim's chest. The autopsy revealed that the elderly and nearly blind woman had died as a result of a massive skull fracture and from the acute loss of blood caused by numerous knife wounds. The defendant confessed to two Indiana State Police officers that he had killed Mrs. Johnson.

\*     \*   ·  \*     \*     \*     \*

### ISSUE I

Defendant interposed an insanity defense. One of the court-appointed psychiatrists, Dr. Birkson, testified that, in his opinion, the defendant could not conform his conduct to the requirements of law and, at one point, he acknowledged that the defendant's conduct was, in a sense, based upon "impulse". The trial court refused the defendant's tendered instruction on impulse, but gave Instruction No. 19. The rejected tendered instruction and Instruction No. 19, the one given, were as follows:

DEFENDANT'S TENDERED INSTRUCTION [REJECTED]

"You are instructed that under the law of this State a person may have sufficient mental capacity to know right from wrong and to be able (sic) to comprehend the nature and consequences of the act, and yet not be criminally responsible for his action; for an irresistible impulse of a person accused is a lawful excuse for the commission of an act, otherwise a crime, where the person committing it, though

he is capable of knowing right from wrong, lacks in consequence of a diseased mind, the will power to resist an impulse to commit crime."

TRIAL COURT'S FINAL INSTRUCTION NO. 19

"Under the Defendant's plea of not guilty there is an issue as to his sanity at the time of the alleged offense. The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essestial (sic) to the commission of a crime. The sanity of the Defendant at the time of the commission of the alleged offense is an element of the crime charged and must be established by the State beyond reasonable doubt, just as it must establish every other element of the offense charged. A Defendant is insane within the meaning of these instructions if, at the time of the alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

Defendant contends that this instruction did not include "irresistible impulse" as among the conduct for which one could not be held criminally responsible and cites *Fuller v. State,* (1973) 261 Ind. 376, 304 N.E.2d 305, as requiring that, upon request, an instruction be given on the irresistible impulse test. We do not agree that *Fuller* so holds.

In the *Fuller* case the appellant assigned error in the giving of an insanity instruction which did not adequately state the "irresistible impulse" concept, and this Court rejected the claim of error because the concept was adequately explained in another instruction, which instruction was quoted in full and included a specific reference to "irresistible impulse." We did not, however, say that such a specific inclusion was required.

In *Hill v. State,* (1969) 252 Ind. 601, 251 N.E.2d 429, we embraced a modified version of the American Law Institute's (ALI) definition of insanity, which

was sufficiently incorporated into Instruction No. 19. In so doing we observed that our rule theretofore, which was the *McNaghten* rule in part but modified to include the irresistible impulse test, was too restrictive because the term implied that the impulse must be sudden and overwhelming and did not include cases involving reflection or brooding. The definition from *Hill,* however, while accommodating circumstances not contemplated by the irresistible impulse test, did not eliminate it. Rather, the definition was simply expanded so as to include both the irresistible impulse manifestations and those that were the result of other overpowering of the mind. The lack of substantial capacity to conform one's conduct to the requirements of law is equally as definitive of an "irresistible impulse" as it is of any other inability to conform one's conduct. There was, therefore, no need for the refused instruction, the substance thereof having been included in Instruction No. 19.

ISSUE II

State's Exhibits 14 and 15 are videotaped recordings of Defendant's confession. At trial, defense counsel objected to their admission on the basis that the contents of the recordings are "not essentially discernible," citing *Lamar v. State,* (1972) 258 Ind. 504, 282 N.E.2d 795, in which this Court held that admission of a sound recording should be preceded by a foundation disclosing, among other things, that the recording "is of such clarity as to be intelligible and enlightening to the jury." *Id.* at 513, 282 N.E.2d at 800. The test of the admissibility of a sound recording stated in *Lamar* applies with equal logic to the admissibility of a videotape.

We adopted the *Lamar* test in order to eliminate the introduction of recordings that are of such a poor quality that they might lead to jury speculation as to their contents. We do not, however, require uniform perfection throughout a recording; rather, the focus is upon whether the recording taken as a whole, or a crucial seg-

ment thereof, is of such poor quality that it is likely to lead to jury speculation as to its contents. *Pettit v. State,* (1979) Ind., 396 N.E.2d 126.

We have viewed both tapes and we find no error in their admission into evidence. The beginning of the first tape depicts the defendant being informed of his constitutional rights and his subsequent waiver thereof. The video quality is very good, at first. The audio is poor due to a constant "buzz"; however, the defendant's statements and confession are readily discernible. Following the defendant's waiver of his constitutional rights, the picture gradually fades away, though the audio remains discernible. One can clearly comprehend the defendant's admission that he killed Mrs. Johnson, and that he had planned the killing the night before. The defendant is also heard to say that the killing was, in his words, "premeditated", and that he described the victim as being old, blind, and afraid. At several points, it is difficult to discern the questions being asked by one police officer in particular, perhaps because the officer was too far away from the microphone; and, occasionally the defendant's responses become muffled or obscured by various background noises, such as a ringing telephone. The police department should have taken greater precaution to prevent such deficiencies; however, it is apparent from the tape's contents, immediately preceding and following the garbled statements, that such statements dealt with minor details, e. g., the location of the defendant several hours after the murder, etc. Regarding the second tape—which is a continuation of the first, the picture problem of the first tape was cleared up and the audio quality remained the same. Under these circumstances, there was no error in admitting these tapes into evidence.

### ISSUE III

Defendant next contends that the trial court erred in admitting into evidence his oral confession and testimony concerning that confession. This specification of error is predicated upon three separate grounds.

First, he contends that the confession was the product of an illegal, warrantless arrest in violation of the Fourth Amendment to the United States Constitution. However, this ground for objection was not raised at trial; rather, it first appears in Defendant's motion to correct errors. It is well-settled that the grounds for objection to the admission of evidence asserted on appeal may not differ from those raised at trial. *Clark v. State,* (1978) Ind., 380 N.E.2d 550; *Jones v. State,* (1973) 260 Ind. 463, 296 N.E.2d 407. In any event, the record reflects that the officers went to the defendant's residence to discuss the murder of Mrs. Johnson and that the officers informed him of his rights. Defendant refused to sign a rights waiver form, but stated that he would talk with the officers and answer their questions. During the course of the ensuing discussion, Defendant confessed to having killed Mrs. Johnson. In Indiana, a police officer may arrest an individual without a warrant when the officer has reasonable and probable cause to believe that the person has committed a felony. *Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144. The question of whether or not there is probable cause is determined by the facts and circumstances within the knowledge of the officer at the time of the arrest. *Sanchez v. State,* (1971) 256 Ind. 140, 142, 267 N.E.2d 374. Upon the facts of this case, the officers had probable cause to believe that Defendant had committed the felony of murder; thus, they were justified in making an immediate arrest without benefit of a warrant.

Next, the defendant alleges that the State failed to sustain its burden of proof to show that his "confession was voluntary and the product of a rational mind."

"The State has a heavy burden to demonstrate at the trial level that the defendant knowingly, voluntarily, and intelligently waived his right to remain silent and to consult with counsel. The question is whether, looking at all the circumstances, the confession was made freely and voluntarily and was not induced by any threats

or improper influence. Upon a review of the denial of a motion to suppress a confession and the subsequent admission of that confession over objection, the Court will not reweigh the evidence or judge the credibility of the witnesses. The admissibility of a confession ultimately depends upon questions of fact which are to be resolved by the trial court. If the evidence is conflicting, we will consider only that evidence which supports the trial court's ruling." *Kizer v. State,* (1979) Ind., 392 N.E.2d 466; (Citations omitted).

Defendant's argument presupposes the acceptance, as true, of his testimony that he had taken LSD approximately 8 hours before his oral confession. He argues that his confession was the result of police coercion and a loss of will induced by the LSD. He asserts that this testimony of having ingested LSD was unrefuted, but we do not agree. The trial court was able to observe the defendant's demeanor during the waiver of his constitutional rights and the subsequent confession by viewing the videotape. There was little, if any, indication in his demeanor that he was under the influence of a drug or that he was suffering from a loss of willpower. As we stated earlier, this Court will not reweigh the evidence but will look only to that evidence which supports the determination of the trier of fact. In the case at bar, there was sufficient evidence to support the trial court's ruling that Defendant's confession was voluntarily given and not the result of an alleged ingestion of LSD.

Defendant next contends that the State failed to sustain its burden of proof to establish, beyond a reasonable doubt, that he waived his right to remain silent prior to making any incriminating statements. He asserts that the confession was the result of sustained psychological pressure by the police and cites in support of his contention, *Watts v. Indiana,* (1949) 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, and *Spano v. New York,* (1959) 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265. However, the confession in *Watts* was obtained after 5 days of unrelenting interrogation during which time Watts was locked in the "hole", was not informed of his rights, and was denied his preliminary hearing in contravention of Indiana statutory law. Likewise, in *Spano v. New York, supra,* a confession was obtained only after prolonged interrogation, by numerous officers, beginning in early evening and continuing through the night and into the following morning, during which time the defendant's requests to see an attorney were denied. In contrast, the defendant in the instant case was not incarcerated when he agreed to discuss the case with them, although he refused to sign a rights' waiver form. The record supports his contention that the officers used subtle psychological tactics in questioning him; however, Defendant has not shown, nor does the record reflect, that such tactics were of an unfair or coercive nature. Rather, the record clearly supports the trial court's ruling that the confession was freely given and that it was not the result of a will overpowered by drugs or coercive police tactics.

In reference to his refusal to sign the waiver of rights form, the defendant contends that the officers should have determined whether his willingness to talk, combined with his refusal to sign the waiver forms, were the product of intelligence and understanding or of ignorance and confusion, citing *Millican v. State,* (1973) Ind. App., 300 N.E.2d 359, 363 and *United States v. Nielson,* (7th Cir. 1968) 392 F.2d 849.

In the *Millican* case, the Court of Appeals relied upon the following language from the *Nielson* case, and which language was cited with approval by this Court in *Brown v. State,* (1971) 256 Ind. 558, 270 N.E.2d 751:

" * * * [T]he defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his ap-

parent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's negative responses to the questions asked him were not made after a knowing and intelligent waiver of his rights." 300 N.E.2d at 363.

■ In the case at bar, Detective Boyd testified as follows:

"A. I asked him if he wished to sign the form and he said no, he did not.

"Q. What did you say?

"A. I asked him for what reason he didn't want to sign the form, if any particular reason. He was advised of his rights and he was aware of all his constitutional rights. He said he didn't want to sign the form. He said, 'I will talk to you but I am not going to sign away my rights.'

"Q. Did you explain to him he did not have to talk to you?

"A. Yes, sir, he was advised he did not have to talk to us and he could have an attorney. He said he would talk to us but he didn't want to sign a form."

When the accused refuses to sign a rights' waiver form yet expresses a willingness to talk, the police should inquire as to whether Defendant's paradoxical stance is the result of "intelligence and understanding or of ignorance and confusion." *Id.* In the case at hand, unlike the situation in the *Millican* and *Brown* cases, the officers did make that further inquiry. Additionally, the officers again reminded Defendant that he did not have to talk to them and that he had a right to an attorney. Thus, the trial court did not err in holding that the police officers did not violate the defendant's rights by questioning him further.

## ISSUE IV

■ Prior to the cause having been venued to LaPorte Superior Court, a hearing was held by the judge of the Porter Superi-

or Court, who at that time was the Honorable Alfred J. Pivarnik, to determine whether the defendant was competent to stand trial. After hearing the testimony of the two court-appointed psychiatrists, the court found that he was competent. On appeal, the defendant contends that Judge Pivarnik took judicial notice of his own observations of Defendant's demeanor in prior proceedings in the case and that such action was contrary to the holding of this Court in *City of Hammond v. Darlington,* (1961) 241 Ind. 536, 173 N.E.2d 662. He further contends that the trial court, in determining whether Defendant was competent, cannot base its decision on material not in the record, citing *Hansford v. United States,* (D.C.Cir.1966) 124 U.S.App.D.C. 387, 390, 365 F.2d 920, 923. The State points out, however, that this specific issue was not raised in the defendant's motion to correct errors; therefore, it is not properly before this Court. In any event, his arguments are without merit. Initially, we note that the defendant incorrectly characterizes Judge Pivarnik's actions as taking "judicial notice" of Defendant's demeanor. Judge Pivarnik merely observed that he was allowed to consider Defendant's demeanor at prior proceedings of this cause as well as his demeanor at the competency hearing itself. The judge's observations were correct. See, *Howard v. State,* (1976) 265 Ind. 503, 355 N.E.2d 833; *Schmidt v. State,* (1974) 159 Ind.App. 412, 307 N.E.2d 484. At no time did the judge state that he was taking "judicial notice" of his own observations of Defendant's demeanor. To do so would have been an incorrect use of that term. The Defendant's case of *City of Hammond v. Darlington, supra,* is not on point. The issue in that case was whether an appellate court could take judicial notice of the evidence presented in a former appeal. The holding in *Hansford v. United States, supra,* was that the trial court's decision must be based upon material in the record; it does not preclude the trial court from taking into consideration Defendant's demeanor at those hearings which are reflected in the record.

Defendant further contends that there was insufficient evidence that he possessed that minimum degree of rationality necessary to assist in his own defense. He cites *Dusky v. United States,* (1960) 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, wherein the United States Supreme Court stated:

"We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events.' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" 362 U.S. at 402, 80 S.Ct. at 788–89, 4 L.Ed.2d at 825.

Dr. Makovsky, a court-appointed physician, testified that the defendant was alert, coordinated, oriented as to time and place, understood the nature of the charge, and had the ability to assist his attorney in the preparation of his defense. Defendant asserts that Dr. Makovsky's testimony was insufficient to show competency, because the doctor made no reference whatsoever to the term "rational". Such argument is without merit inasmuch as it was the clear import of Dr. Makovsky's testimony that Defendant was sufficiently rational to participate in his own defense. Thus, the rule stated in *Dusky v. United States, supra,* was satisfied in the case at bar.

### ISSUE V

The trial court instructed the jury on insanity as follows:

"Under the defendant's plea of not guilty, there is an issue as to his sanity at the time of the alleged offense. The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essestial (sic) to the commission of a crime. The sanity of the defendant at the time of the commission of the alleged offense is an element of the crime charged and must be established by the State beyond a reasonable doubt, just as

it must establish every other element of the offense charged. A defendant is insane within the meaning of these instructions if, at the time of the alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

"As used in this definition the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

Defendant recognizes that this instruction conforms to the definition of insanity which this Court adopted in *Hill v. State, supra,* however, he argues that we should re-consider the inclusion of the second paragraph, which he refers to as the "caveat paragraph", within that definition. He contends that the caveat paragraph is ambiguous and confusing to the jury and cites several decisions of the Sixth and Ninth Circuits of the United States Courts of Appeals, wherein those Circuits concluded that said paragraph should be omitted. He states his argument as follows:

"* * * Appellant respectfully submits that the ambiguity of the 'caveat paragraph' renders that paragraph not only meaningless to the jury, but creates a confusion that jurors might not be able to overcome when attempting to separate fact and apply law to their factual findings. It is conceivable, that a defendant's anti-social conduct is, indeed, indicative of a mental disease or defect justifying the insanity defense. However, it is also conceivable that the trier of fact, instructed in regard to the 'caveat paragraph' may well be misled into believing that not only cannot that prior anti-social conduct be used as evidence of mental disease or defect, but that that prior anti-social conduct is, indeed, strongly indicative of what one might consider to be merely an habitual criminal. See *Wade v. United States* (9th Cir. 1970), 426 F.2d 64.

"Appellant concedes that the purpose of the 'caveat paragraph' may well be meritorious. Indeed, to the well-trained, educated mind, the paragraph may appear to be of sparkling clarity. However, more than one Court has noted ambiguity and confusion, if not frustration, and Appellant submits that that confusion and ambiguity should not be visited upon the criminal defendant. The chance that the jury may be misled is not a risk the defendant should bear."

 The purpose of the caveat paragraph is to insure that the jury understands that repeated criminal or anti-social conduct, though abnormal, does not, standing alone, constitute a mental disease or mental defect within the definition of what constitutes an insane defendant. Defendant concedes that the purpose behind the paragraph may be meritorious, but contends that the instruction is too difficult or too ambiguous for a juror to understand. However, in the *Hill* case, this Court gave approval to the caveat paragraph because it clarifies and limits the definition of "mental disease or defect." We re-affirm that decision.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., not participating.