**Donald EILAND, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–981A220.**

Court of Appeals of Indiana.

April 12, 1982.

---

Michael A. Dvorak, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen., of Indiana, Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

James Reynolds resided at 1133 Corby in South Bend, Indiana. At about 9:30 p. m. on November 7, 1980 Reynolds heard someone breaking in his back door and he called the police. Officers Trennery and Zurat responded to the call. Initially the officers mistakenly went to the rear of a house located adjacent to 1133 Corby. Realizing their mistake, the officers went to a fence separating the two properties and from that position they saw three individuals at the rear door of 1133 Corby. The officers observed two of the individuals actively breaking in the door. When the officers were sighted, the suspects fled, two going toward the front of the house and one toward the alley in back of the house. Officer Zurat apprehended the appellant, Eiland, in an area between an alley and a fence located at the rear of 1133 Corby. Officer Trennery apprehended another suspect, Ezell Bailey, at the front of the house.

Eiland was charged by information with the offense of attempted burglary and he entered a plea of not guilty. Trial before a jury was commenced on February 3, 1981. On February 5 the jury returned a verdict of guilty of attempted burglary. On March 11, 1981 Eiland was sentenced to the custody of the Indiana Department of Corrections for a determinate period of 10 years. From a denial of his motion to correct errors, Eiland now appeals.

We affirm.

We restate the appellant's issues:

1. Did the trial court err in admitting the state's exhibits 10, 11 and 12?
2. Did the trial court err in giving instruction No. 8?
3. Did the trial court err in giving instruction No. 3?
4. Did the trial court err in reading an instruction to the jury when it was deadlocked after five hours of deliberation?
5. Was the guilty verdict freely given and unanimous?

ISSUE 1

State's exhibits 10, 11 and 12 were photographs of socks taken at the scene. Officer Trennery testified that he observed one of the suspects, Ezell Bailey, wearing socks on his hands when he was at the back door of the house. As Bailey ran toward the front of the house he either discarded or lost the socks on a fence and on the ground. The photographs show the location of the socks at the scene. Defense counsel did not object to Officer Trennery's testimony about the socks. However, when the state moved to introduce the photographs of the socks into evidence, the defense counsel objected on the grounds that the photographs were prejudicial and that the state had not shown any connection existing between Eiland and the socks. The trial court overruled the objection and admitted the photographs in evidence. Defense counsel made the same objection when the actual socks were admitted into evidence.

The appellant Eiland cites the dissenting opinion in *McPhearson v. State* (1969), 253 Ind. 254, 253 N.E.2d 226 to support his contention that the admission of the photographs and socks was reversible error. In *McPhearson* a pistol used by an accomplice was admitted as evidence against a defendant who was armed with a knife. The Supreme Court stated that no reversible error occurred:

"There was evidence in the record that there had been two participants in the robbery,—appellant and the second man who had had a pistol. Although the pistol had no direct bearing on the specific charge brought against appellant to-wit, robbery while armed with a knife, it was certainly relevant evidence tending to add credence to the story of the state's principal prosecuting witness, Hodgin, that the robbery actually happened in the manner in which he testified that it did. Any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted. Hodgin's testimony relating to the actual hold-up was crucial to the state's case and any evidence which would tend to substantiate his version of the events as they took place would definitely tend to throw light on appellant's guilt. Hence the mere fact that the gun being offered into evidence was in no way directly tied to the particular offense charged, would not solely determine its admissibility."

253 N.E.2d at 227, 228.

While appellant cites the dissenting opinion, the majority decision is apposite on the issue of the admissibility of the photographs and socks. The introduction of this evidence was proper as it tended to support Officer Trennery's version of the incident. Further, evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused even though its tendency to do so may be slight. The trial judge has wide latitude in ruling on the question of relevancy. *Jefferson v. State* (1980), Ind.App., 399 N.E.2d 816, 825. The facts most favorable to the verdict are that Eiland was observed in the company of Bailey, who was wearing socks on his hands, while the break-in was occurring. A reasonable inference could be drawn that Bailey was wearing socks to avoid leaving identifying fingerprints, and that would tend to prove that he possessed criminal intent. Since the testimony of the officers placed Eiland at the scene with Bailey, the evidence of the socks had a tendency to prove that Eiland and Bailey were involved in a criminal scheme to burglarize the residence. Thus the evidence was relevant as to Eiland's guilt or innocence and was properly admitted.

## ISSUE 2

■ The appellant argues that the trial court erred in giving instruction No. 8, which stated:

"You will see that these instructions do not contain any information concerning the penalties that could be imposed upon a conviction. In this case, I am solely responsible for assessing the penalty within a broad range of possibilities. The law has been so written that you may make your decisions without being influenced by the apparent severity or leniency of the sentence."

Eiland contends that this instruction brought the jury's attention improperly to the issue of penalties. We find appellant's argument to be without merit. In *Jones v. State* (1981), Ind., 425 N.E.2d 128 the same instruction was given. The appellant therein contended that the instruction did not go far enough in advising the jury of possible penalties. The Supreme Court found the instruction to be proper since the penalties are usually a judicial matter outside the jury's responsibility.

The court did not find any infirmity in the instruction in the sense that it improperly focused the jury's attention upon the issue of penalties. Moreover, in *Bailey v. State* (1980), Ind., 412 N.E.2d 56, in regard to an instruction that elaborated upon the roles of court and jury in assessing penalties, the Supreme Court stated that the giving of an instruction which "is an aid to the jury in forgetting any concern over potential punishments. . . ." is within the discretion of the trial court. *Id.* at 61. Accordingly, we find no abuse of discretion and no error.

## ISSUE 3

■ The trial court gave instruction No. 3 and appellant asserts error.

"You are instructed that you may consider evidence of the flight of the accused, if any, as showing consciousness of guilty, along with all the other evidence in the case."

The instruction is in the proper form, *Roseberry v. State* (1980), Ind., 402 N.E.2d 1248. Also, the evidence was sufficient to support the instruction, *Clemons v. State* (1981), Ind., 424 N.E.2d 113, 119, as Officer Zurat testified that appellant went over two fences in an attempt to leave the scene and stopped only after Officer Zurat had identified himself and threatened to shoot. The trial court did not commit error in giving this instruction.

## ISSUE 4

■ The appellant contends that the court improperly repeated an instruction to the jurors after they had deliberated for 5 hours. At this point in the deliberation the jury foreman informed the court that the jurors were deadlocked, six to six. After consulting with counsel, the trial court decided to re-read one instruction,[1] a procedure which had been approved in *Lewis v. State* (1980), Ind.App., 409 N.E.2d 1276 where a jury was unable to reach a verdict. Defense counsel did not object to the giving of this instruction. In fact, defense counsel informed the court that: "Mr. Eiland has expressed to me his willingness or desire to have this matter terminated as soon as possible," and Eiland personally informed the

---

1. "THE COURT: The verdict of the jury must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to that verdict. Your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to reconsider your own views and to change your opinion if you are convinced that it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

Under that instruction, you will be permitted to return to the jury room to deliberate further upon this case."

court that this fairly stated his opinion. Thus Eiland did not object to the instruction. In fact, he apparently wanted the instruction read.

Subsequent to trial, the Court of Appeals' decision in *Lewis* was vacated by the Supreme Court in *Lewis v. State* (1981), Ind., 424 N.E.2d 107. The Supreme Court held that reversible error occurred when a trial court separates an instruction and re-gives it to the jury after deliberations have begun.

We are cognizant of the Supreme Court's decision in *Lewis*. However, in the present case the appellant failed to object to the giving of the instruction when the trial court provided the opportunity to do so. In fact, the appellant informed the court of his desire to have the matter "terminated as soon as possible." At no point did the appellant move for a mistrial. To preserve error a timely objection must be made but appellant noted on the record that he had no objection to the instruction being re-read to the deadlocked jury. Thus appellant cannot now complain about the giving of the instruction when he indicated that he wanted the instruction read.

ISSUE 5

■ Appellant next contends that the guilty verdict was not freely given or unanimous. On February 5th at 2:35 p. m. the jury began its deliberations. At 7:35 p. m. the jury informed the court that it was deadlocked and the court read to the jury the instruction discussed in Issue 4. At midnight the court informed counsel that it intended to ask the jurors whether a verdict could be reached if deliberations continued that night or whether a verdict could be reached the next day if the jury was adjourned for the night. Defense counsel did not object to this procedure or move for a mistrial. When the jurors were individually polled they agreed that a reasonable probability existed that a verdict could be reached if the deliberations continued. At about 1:00 a. m. the jury reached a verdict of guilty.

Appellant now argues that the court erred "by returning the jury to the jury room to deliberate at 12:00 midnight after they had spent more than ten (10) hours in deliberation, rather than sequestering them for the evening." However, appellant did not object when the trial court proposed this procedure. Rather, when the court asked the appellant whether this procedure was agreeable, appellant replied "yes."

■ The length of time permitted for deliberation by a jury is largely within the discretion of the trial court. *Morris v. State* (1977), 266 Ind. 473, 364 N.E.2d 132, 139, *cert. denied* 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462; *Cade v. State* (1976), 264 Ind. 569, 348 N.E.2d 394, 400. Moreover, the appellant did not object when the trial court proposed to question the jurors. Nor did the appellant object when the jurors were requested to continue their deliberation. Thus any alleged error was not properly preserved for appeal and was waived.

The appellant also asserts that the verdict was infirm because at least one juror gave in to the will of the majority. On February 9th a juror informed the trial court that "we just more or less gave in, which I don't know is the right thing to do."

■ That a juror may not impeach his verdict is a well settled rule. As Justice Givan stated in *Stinson v. State* (1974), 262 Ind. 189, 313 N.E.2d 699, 704:

"If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries."

Thus, the trial court was not in error when it declined to overturn the verdict based on this information.

For the foregoing reasons we affirm.

HOFFMAN, P. J., and STATON, J., concur.