STUCK *v.* STATE OF INDIANA.

[No. 370S71. Filed December 15, 1970. No petition for rehearing filed.]

*Wendell B. Iddings,* of Lebanon, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, C.J.—The appellant was charged by indictment with the crime of first degree murder. Trial by jury resulted in a conviction of murder in the second degree and appellant was sentenced to the Indiana State Prison for life.

Several issues are raised on appeal as grounds for reversal. Appellant contends the verdict is not sustained by sufficient evidence and is therefore contrary to law; he assigns as error the trial court's overruling of his motion entitled A Plea in Abatement, Motion to Suppress Evidence and Motion for Discharge of Defendant and, its failure to sustain his motion

for a directed verdict at the close of the State's evidence; finally appellant challenges the admission of certain testimony by one Floyd McClure, his father-in-law.

In reviewing a criminal conviction we may consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Buckner* v. *State* (1969), 252 Ind. 379, 248 N. E. 2d 348; *Carter* v. *State* (1968), 250 Ind. 50, 234 N. E. 2d 850; *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874.

In this case that evidence may be summarized as follows:

On January 11, 1969, appellant and Floyd McClure consummated a plan to steal a pig and in pursuance of their designs they secured a 22 caliber pistol owned by appellant's wife. Appellant, attired in a red hunting hat and a blue wind-breaker jacket, elected to drive his wife's 1959 Chrysler Imperial which bore Indiana license plate number 49N7614. The car was pale green with a white top and had a cardboard with a slit in it over the driver's door window.

After a stop at a tavern they drove to the area of Westfield High School where appellant parked the car near a field containing swine and proceeded to shoot and kill one of the animals. At approximately this time Westfield Deputy Marshall David Brown came upon the scene in his patrol car. He parked near appellant's vehicle and called him over making a note of the appellant's license plate number on a note pad which lay in the seat to the officer's right.

The deputy then called the Noblesville Police dispatcher and requested a record check on appellant, Fred C. Stuck. Approximately nine minutes later, at 8:37 P. M., the dispatcher was unable to reach Officer Brown on the radio. Prompt investigation led to his discovery, shot to death behind the steering wheel of his car at the scene of his confrontation with the appellant. His service revolver was missing and it was later revealed by ballistics testing that it had been the gun used to kill him.

Observing the license number written on the note pad, the investigating officers had it checked through the records bureau. When it proved to be registered to Doris Stuck, appellant's wife, an immediate broadcast was made to be on the lookout for appellant and a car bearing Indiana license number 49N7614.

At approximately 8:30 P.M. a farmer had noticed a Westfield police car and a greenish car with a light top parked near where the deputy was found. He approached within fifty or sixty feet on foot and observed that the police vehicle's dome light was on and that two men were sitting in it. One, an officer, appeared to be writing a ticket. The other occupant was wearing a red hat and what appeared to be a blue jacket. In the pale green car, on the passenger side, sat a third individual.

Also at about 8:30 P.M. Rodney Dennis, driving near the scene, saw the police car and a light colored car parked. He saw two people in the police vehicle; the driver appeared to be writing and the other occupant was wearing a red hat. The light hued car had a piece of cardboard with a slit in it over the driver's door window.

One Marvin Lockhart testified that, at approximately 9:00 P.M. that same evening while motoring in the area, he observed a light colored 1959 Chrysler Imperial with its trunk open four to six inches and secured by a wire. The vehicle proceeded south on Keystone Avenue toward Indianapolis and Lockhart had occasion to follow it for approximately fifty blocks. During this period, while both cars were stopped at a light, Lockhart could see there were two occupants in the light colored automobile. He was unable to see their faces but did note that the man in the passenger's seat had on a checkered shirt.

Officer Huber of the Indianapolis Police Department heard the broadcast directing a lookout for appellant and a car bearing the particular license number. He recalled that he had stopped appellant in a 1959 light green Chrysler Imperial

bearing Indiana license plate 49N7614 for a muffler violation earlier in the evening, around ten o'clock. At that time appellant had a passenger with him who wore a checkered shirt. Appellant had given Officer Huber the area of his residence. Huber reported his recollections to his superiors and was directed to seek out appellant. Upon locating the Chrysler Imperial parked in front of a duplex residence Huber radioed headquarters and was directed to wait assistance. As help arrived a short while later, Huber saw McClure on the front steps of the residence wearing a checkered shirt. The officers directed McClure to stop but he looked in their direction and turned into the house; the officers followed him and caught up a short distance inside the door. McClure had proceeded to start up some stairs to the second floor and was there arrested. At this time appellant came into view from off the adjacent kitchen wearing a blue jacket and a red hunting hat. In the kitchen, in open view, lay a partly butchered pig. Appellant, asked if he was Fred C. Stuck, replied that he was not and further indicated that no one by that name lived there. The officers asked to see his identification papers and when they revealed his name he was arrested. The time was approximately 11:45 P.M., about two and one half hours after Deputy Brown had been found.

Certain members of the arresting contingent looked through the windows of the 1959 Chrysler Imperial parked in front of the arrest situs. Inside they observed two pistols, one stuck in the driver's door handrest and the other lying partially under the front seat on the driver's side. They opened the unlocked doors and secured the pistols. One was of 22 caliber; the other, a 38 caliber, was Deputy Brown's.

On appeal this court may review the record to ascertain if, *as a matter of law*, there was sufficient evidence to justify a trier of fact in reasonably inferring guilt beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

Proof beyond a reasonable doubt may be established by circumstantial evidence; however, such circumstantial evidence must be of sufficient probative value to exclude every ■ reasonable hypothesis of innocence. Appellant properly cites *Manlove* v. *State, supra,* as authority for this proposition but contends that since each and every hypothesis, other than that of his guilt, has not been excluded that his conviction is improper. However, appellant fails to recognize that *Manlove* further holds that the evidence need not point to only *one* reasonable alternative to support a verdict. On the contrary,

"However, it should also be stated that where there are two *reasonable inferences* arising from the circumstantial evidence in a case, one of *guilt* and *another of innocence,* it is not the duty or right of this Court to reverse simply because *we* might believe the circumstances do not exclude every reasonable hypothesis of innocence." 250 Ind. at 77, 232 N. E. 2d at 878.

A review of the evidence most favorable to the state reveals ample evidence of probative value to support a reasonable inference of guilt, notwithstanding reasonable inferences of innocence.

Appellant's car was placed at the scene. Appellant admitted having gone to the area to steal a pig and a partly butchered pig was found in his kitcnen. He was arrested wearing a red hat; a man wearing a red hat was seen with Deputy Brown near the time of his murder. A check on appellant had been requested by the deputy short before his death. The murder weapon was found in appellant's car.

From such information it seems not unreasonable to infer that appellant was caught in an illegal act and that he took the life of Officer Brown to effect his escape. Admittedly, other inferences may be possible, particularly since appellant testified that he let McClure use the red hat while they shot the hog and went about loading it and that McClure returned

it on the way home. But, we may not choose from among possible inferences. Making such elections is the province of the trier of fact as long as its conclusions are reasonable. We cannot say that as a matter of law they were not so in this case.

Appellant next asks that we review the propriety of the trial court's refusal to grant his request for a directed verdict at the close of the state's evidence. To avoid a directed verdict the state must merely make out a prima facie case. *Holliday* v. *State* (1970), 254 Ind. 85, 257 N. E. 2d 679. Since it is readily apparent from the foregoing discussion that this burden was met, the motion was properly overruled.

We turn now to appellant's contention that it was error to fail to sustain a particular motion he presented and entitled A Plea in Abatement, Motion to Suppress Evidence and Motion for Discharge of Defendant. By this singular motion appellant sought to challenge the legality of his arrest, a later arrest warrant, and the seizure of the guns on the basis that his rights under Article I, Section 11 of the Indiana Constitution, the Fourth Amendment of the United States Constitution and Ind. Ann. Stat. § 9-704A (1956 Repl.) had been violated. The constitutional claims will be considered first.

Appellant was arrested without benefit of a warrant. Clearly and undeniably the United States Constitution provides that arrests and searches shall be made under authority of a warrant. However, the dictates of practical police operations have long since caused an exception to evolve. The existence of probable cause coupled with exigent circumstances gives rise to the exception. *Hadley* v. *State* (1968), 251 Ind. 24, 238 N. E. 2d 888, cert. den. 394 U. S. 1012.

Probable cause exists where facts and circumstances are known to an arresting officer, or he has sufficiently trust-worthy information of them, to reasonably lead him to believe that a crime has been or is being com-

mitted. *Williams* v. *State* (1969), 253 Ind. 242, 253 N. E. 2d 242; *U. S.* v. *Stallings* (7th Cir. 1969), 413 F. 2d 200.

In this case the arresting officers had reasonably trust-worthy information as to the following facts:

(1) Deputy Brown had requested information on Fred C. Stuck at approximately 8:26 P.M.

(2) He could not be reached by radio a few minutes later.

(3) A license number assigned to Doris Stuck was the last notation on the deputy's note pad.

(4) Appellant, Fred C. Stuck, was stopped by Officer Huber while driving a car bearing the particular license number and had with him a passenger wearing a checkered shirt.

(5) When appellant's car was found a short while after Officer Huber's encounter a man in a checkered shirt was nearby and did not stop when asked by uniformed police officers to do so.

(6) When the officers followed McClure inside they were confronted with appellant, dressed in a red hat, as was the suspect sought.

(7) When asked if he was Fred C. Stuck appellant denied his identity.

This chain of information provided sufficient probable cause to reasonably believe that Stuck had been involved to warrant his detention. *Patterson* v. *State* (1970), 253 Ind. 499, 255 N. E. 2d 520.

By his motion appellant argued that the arrest was invalid because, even assuming the existence of probable cause, the police had ample time to secure a warrant and had not done so. It is true that a warrant must be secured wherever practicable. It is also true that the dictates of modern police work are a factor to be considered in determining prac-ticability:

"Pertinent to the situation is a statement in *U. S.* v. *Rabinowitz* 339 U. S. 56, 65, 70 S. Ct. 430, 435, 94 L. Ed. 653 'Whether there is time may well be dependent upon considerations other than the ticking off of minutes or

hours.' " *U. S.* v. *Duke* (7th Cir. 1966) 369 F. 2d 355, 357. Cert. den. 386 U. S. 934, reh. den. 386 U. S. 1000.

Here an officer of the law had been shot to death and his gun taken; his killer was on the loose, armed and thus from the facts it is obvious that he was potentially dangerous. It was only natural and proper that the police direct their efforts toward consolidation of their information to effect immediate apprehension of the suspect. For all they knew appellant was fleeing the jurisdiction bent upon exerting any and all efforts necessary to effect escape. We are unable to say that under the facts of this case failure to obtain a warrant during a hectic two hour period was improper under either the Constitution of this state or that of the United States.

As a final challenge to the validity of his arrest appellant contends the warrant secured under Ind. Ann. Stat. § 9-704A (1956 Repl.), after the sight arrest, was obtained in violation of statutory mandates and was thereby rendered invalid. We find it unnecessary to consider this argument as the prior on sight arrest was valid. *Since sufficient probable cause existed in this case* to support that arrest it is not invalidated by alleged procedural defects in the later process of securing a warrant. *U. S.* v. *Duke, supra.*

We turn now to the matter of the search of appellant's car, the legality of which was challenged in appellant's earlier mentioned motion. His attack again focused on the absence of a warrant.

As with arrests, it is the acknowledged rule that a warrant is required to validate a search. Also as with arrests, the existence of probable cause and exigent circumstances creates an exception. Here the officers had clear information that the car had been at the scene where the deputy was killed and from all indications the officers had probable cause to believe it had been involved in the crime. The deputy's gun was missing and the officers could plainly see two revolvers inside

the car. These facts taken in context with the other facts and circumstances of the case and coupled with the inherent mobility of an automobile, created justification for a warrantless search. *Chambers* v. *Maroney* (1970), 399 U. S. 42, 26 L. Ed. 2d 419; *Patterson* v. *State, supra.*

The final issue for our determination involves the admissibility of a portion of McClure's testimony. Over appellant's seasonable objection, McClure was allowed to testify that on the evening of January 12, 1969, while incarcerated in the Hamilton County Jail, appellant had admitted the shooting. Clearly such testimony was hearsay and absent an exception to the general rule was inadmissible on that ground.

It is appellant's position that the reported utterance was too far removed in time from the homicide to fall within the res gestae exception and was therefore inadmissible. But, admissions of a defendant, even while in custody, are admissible against him, even though hearsay, as long as they are voluntarily made. *Leaver* v. *State* (1968), 250 Ind. 523, 237 N. E. 2d 368, cert. den. 393 U. S. 1059; *Weaver* v. *State* (1966), 247 Ind. 315, 215 N. E. 2d 533. There is no claim, nor in fact even hint, that appellant's statement to McClure, his father-in-law, was in any manner involuntary. Neither is there any claim nor indication that it was secured at the request of the police. We therefore find his revelations were properly allowed into evidence.

For the foregoing reasons we hold that appellant's conviction should be upheld.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., dissents without opinion.

NOTE.—Reported in 264 N. E. 2d 611.