WALTER BANKS v. STATE OF INDAINA.

[No. 1074S204. Filed July 15, 1976. Rehearing denied September 9, 1976.]

*John O. Moss*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Arthur Thaddeus Perry*, Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Walter Banks, was convicted on December 30, 1973, of first degree murder, homicide in the perpetration of a burglary. Sentenced to life imprisonment on February 13, 1974, the Appellant filed his Motion to Correct Errors on April 15, 1974. It is from the overruling of this motion on July 18, 1974, that the Appellant now appeals.

One of the Appellant's confederates, Larry Cade, was tried separately and was convicted of first degree murder on April 10, 1974. This court affirmed that conviction on June 4, 1976. *Cade* v. *State*, (1976) 264 Ind. 569, 348 N.E.2d 394.

The evidence at trial revealed that on the evening of January 5, 1973, Mr. George Hosmer, age 79, and his wife Lucille, age 78, returned to their home on North Delaware Avenue in Indianapolis. They had been visiting a neighbor, Mrs. Forney, wife of the late Judge Forney. As the Hosmers entered the house, a man ran across the dining room and into the kitchen, toward the rear of the house. Mrs. Hosmer went to a nearby phone while Mr. Hosmer, thinking he had heard something outside, stepped out the front door. Shots rang out from the upstairs of the house. Mr. Hosmer was struck in a rib by a bullet. Mrs. Hosmer was shot and killed.

Mr. Hosmer was able to make it to his neighbor's home, from which police were called. Police arriving on the scene discovered that the back door of the house had been forced and entered. Various items believed to be the objects of an attempted burglary were found at the back steps of the house. Latent fingerprints found at the scene of the crime included prints later identified as those of the Appellant. Bullets taken from the body of the deceased and the home were found to have been fired from the same .25 caliber weapon.

The Appellant was arrested at his home in the early morning hours of January 7, 1973. After his arrest, the Appellant admitted attempting to burglarize the Hosmer residence, admitted shooting Mr. and Mrs. Hosmer, and said he had thrown the murder weapon, a .25 caliber automatic, into Fall Creek. The admissibility of these statements is challenged in this appeal.

Daniel Bridgewater, an acquaintance of the Appellant, testified that on the evening of January 5, the Appellant told him he had shot "some old lady and some old man." The next day, Bridgewater accompanied the Appellant to Fall Creek, where the Appellant's brother tossed something into the water. When asked if the Appellant told him what was tossed in the creek Bridgewater replied, "He mentioned a gun."

## I.

The Appellant's first allegations of error concern the admission into evidence of testimony relating a confession given by the Appellant to police after his arrest. This statement was originally tape recorded by police, but this recording was found by the trial court to be too inaudible to be admitted. Instead, a police officer testified as to what was said. (The Appellant also draws our attention to the admission into evidence of a waiver of rights form signed by the Appellant as if the form, by itself, is prejudicial to the Appellant. Because that form is significant only as evidence regarding the

admissibility of subsequent statements, we will not discuss it separately.)

The first contention regarding the confession is that it was coerced and improperly induced by police. The Appellant asserts that he was awakened and arrested near midnight and was subjected to a "continuous interrogation" which "covered a period of hours." It is also asserted that the Appellant was induced to confess by police promises that cooperation would result in a reduced sentence of "2-21 years."

Three separate hearings were conducted regarding the admissibility of the Appellant's confession. Those hearings revealed that the Appellant was not arrested at midnight, but at about 4:00 a.m., January 7, 1973. Police interrogation of the Appellant ceased at about 5:00 a.m. after police obtained the confession. Police officers testified that while a sentence of "2-21 years" was mentioned, it was in the context of a discussion of the crime of first degree murder, its punishment, and the sentences which attach to all the lesser included offenses of that crime. They testified further that no promises were made. There is no evidence of threats by police. The Appellant was properly advised of his *Miranda* rights when he was arrested and during his interrogation.

This court will not ordinarily overturn a trial court's determination as to the admissibility of a confession when that determination is based on conflicting evidence. *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807. This is the situation we confront in these allegations of coercion and inducements.

It is also asserted that the Appellant's waiver of rights and subsequent confession were not knowingly, voluntarily and intelligently made because he was not permitted to have his parents with him in the interrogation room. In support of this proposition the Appellant cites *Hall* v. *State*, (1976) 264 Ind. 448, 346 N.E.2d 584, in which this court reasserted the principle that a juvenile is entitled

to an opportunity to consult with his or her parent, guardian, or attorney as to whether or not he wishes to waive his or her rights. The Appellant, however, was eighteen years old. He was not a "delinquent child" subject to the jurisdiction of our juvenile courts. Ind. Code § 31-5-7-4.1 (Burns Supp. 1975). He was not a juvenile within the contemplation of *Hall* v. *State, supra*. He was not an individual of such "tender years" that an intelligent, knowing and voluntary waiver of rights could not be made in the absence of his parents.

The Appellant next contends that his arrest was illegal because it was made without a warrant and without probable cause. Under such circumstances, the subsequent confession would be the fruit of unlawful police conduct and would not be admissible into evidence. *Wong Sun* v. *United States*, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. This contention, however, is not supported by the facts.

The trial court specifically found that there was probable cause to arrest the Appellant. We agree. Testimony at the various suppression hearings in this case revealed that police spoke with an informant at approximately 5:00 p.m. on January 6, 1973. This informant named the Appellant as one of three perpetrators of the crime. Also named were Enos Adams and Larry Cade. (There is some confusion as to whether Larry Cade was named by the informant. The Appellant and Adams were certainly identified.) Police were able to locate Adams at his home at about 1:00 a.m. on January 7.

Adams, a juvenile, went to the police station with investigating officers and gave a confession to police which implicated himself, the Appellant and Cade in the shooting. Police thus had information from two informants, one of whom was an eyewitness, upon which their arrest of the Appellant was based. "Probable cause justifying an arrest without a warrant exists where facts and circumstances within the arresting officer's knowledge or of which he had reasonably trustworthy information, would lead

a reasonably prudent person under the conditions at the time to believe a crime had been committed." *Manson* v. *State*, (1967) 249 Ind. 53 at 56, 229 N.E.2d 801 at 803. The facts then known to police officers gave them probable cause to believe that the Appellant had committed the crime in question.

Even given this probable cause, however, we must still examine the circumstances surrounding the Appellant's warrantless arrest. "The United States Constitution provides that arrests and seizures shall be made under authority of a warrant. However, a warrant is not required where probable cause for an arrest exists and exigent circumstances made the procuring of a warrant impracticable. *Stuck* v. *State*, (1970) 255 Ind. 350, 264 N.E.2d 611." *Finch* v. *State*, (1975) 264 Ind. 48, 338 N.E.2d 629 at 631. Such exigent circumstances existed in this case. Police secured the statement of Adams at about 1:30 on a Sunday morning. The obtaining of a warrant would have necessarily involved substantial delay. It was reasonable to fear that, in the meantime, word would get to the other suspects that Adams had "gone downtown" with police and that they would flee.

The Appellant also suggests that the issue of voluntariness of a confession would be aided by the tape recording of the preceding rights waiver. This court has held, however, that rights waivers and subsequent confessions need not be recorded through the same medium. While we have acknowledged the simplicity and protection that the tape recording of both a waiver of rights and confession affords, the absence of such a recording will not preclude the admission of the confession into evidence. *Layton* v. *State*, (1973) 261 Ind. 251, 301 N.E.2d 633. It is interesting to note that the Appellant does not allege that such a recording was not made in this case. Even if it was not made, it is difficult to perceive the harm to the Appellant. The tape recording of the confession here was held inadmissible on the grounds that it was inaudible. The protection which

would be afforded a defendant by an inaudible recording of his waiver of rights is rather illusory.

A similarly curious argument is presented in support of the proposition that the Appellant was denied the right to counsel at his interrogation. It is not asserted that the Appellant at any time requested the presence of counsel and we have found nothing in the record which suggests that such a request was made. Cited in support of the argument is *Coyote* v. *United States*, (10th Cir. 1967) 380 F.2d 305, which discusses the adequacy of advisements to a defendant of his *Miranda* rights. The Appellant, however, does not assert that the advisements given him were in any way inadequate. It is only asserted that the *Coyote* case "emphasizes the consideration of the age, background and circumstances of the defendant in determining whether or not defendant has a clear understanding of his rights." We are presented with no facts which suggest that the trial court did not consider all of these factors.

## II.

Two contentions of error are related to the Appellant's confession without attacking its admissibility. The first revolves around attempted testimony by the Appellant. At one point during his direct examination by defense counsel, the Appellant was asked:

"Q Will you tell the jury what your understanding of the 2 to 21 conversation was?"

This question was apparently intended to bring before the jury the contention that the Appellant was induced to confess by promises of leniency. The question was objected to on the grounds of hearsay and the objection was sustained. The Appellant urges that the sustaining of this objection was erroneous.

It is not necessary to determine whether the sustaining of this objection was correct. Our review of the record reveals that after this objection was sustained the Appellant

was asked, and answered, another version of the same question.

"Q Will you tell the jury what the impression you had that would happen to you?

\* \* \*

A Well, that I would get a 2 to 21 and a, if I didn't tell I was going to get life in prison."

The issue of whether the Appellant was induced to confess was thus put before the jury. The Appellant suffered no harm when the trial court sustained the State's objection to the question originally posed.

The Appellant also contends that the trial court, at the hearing on the voluntariness of the Appellant's confession, erred in refusing to allow a polygraph examiner to testify regarding the results of a lie detector test given to the Appellant. The qualifications of this witness as an expert are stipulated to by the State. Nevertheless, the trial court was correct in its ruling:

"We have held that the degree of accuracy of these tests, currently rated at eighty percent, is not sufficient to mandate their admission on the question of guilt or innocence. *Zupp* v. *State*, (1972) 258 Ind. 625, 283 N.E.2d 540, and *Reid* v. *State*, (1972) 259 Ind. 166, 285 N.E.2d 279, 'clearly establish the principle that absent some form of waiver or stipulation by the parties the results of polygraph examinations administered to witnesses or parties are not competent evidence in criminal prosecutions.' *McDonald* v. *State*, (1975) Ind. App. 328 N.E.2d 436 at 440. Similarly, and absent some form of waiver, mention that a defendant took a polygraph examination, or facts leading to this conclusion will not be permitted. *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130, *McDonald, supra.*"

*Vacendak* v. *State*, (1976) 264 Ind. 101, 340 N.E.2d 352 at 357.

The State stipulated to the qualifications of this witness, and implicitly waived objection to the mention of the polygraph examination at the voluntariness hearing. However, there was at no time a waiver or stipulation which would permit testimony on the results of the test in question.

## III.

The Appellant next draws our attention to oral and written motions *in limine* presented by the State and granted by the trial court. In granting the motions, the trial court ordered the Appellant not "to refer in any way to the pending investigation regarding alleged misconduct on the part of officers James Highbaugh . . . and John Larkins." We find no error in the granting of the State's motions *in limine*.

> "The mere fact that a witness has been arrested or a charge placed against him is not evidence which may be considered as affecting his credibility, and, hence, the fact that an affidavit or indictment was filed against the accused in a criminal prosecution may not be considered for the purpose of affecting his credibility as a witness."

30 I.L.E. *Witnesses* § 194 at 159 (1960).

The fact that officers Highbaugh and Larkins were accused of misconduct and were the subjects of investigation was not admissible into evidence to impeach them as witnesses. The Appellant, however, suggests that the trial court's granting of the motion *in limine* prevented the introduction into evidence of "possible prior inconsistent or contradictory statements that may have been submitted to the Marion County Grand Jury." This is not true. Any prior inconsistent statements could have been put before the jury through questioning which made no reference to the particular circumstances of the investigation in which they were made.

## IV.

On December 6, 1973, the Appellant filed an "Alternative Motion for Remand to Marion County or for Change of Venue." The Appellant urges that the denial of this motion by the trial court was erroneous.

The trial of the Appellant had been venued from Marion County to Hamilton County upon motion of the Appellant's co-defendant, Larry Cade. The cause was filed in Hamilton County Superior Court on March 1, 1973. On November 19, 1973, the Appellant filed a motion for a separate trial. This

motion was granted. The Appellant's subsequent "alternative motion" was based primarily on the grounds that he had a constitutional right to be tried in the county in which the crime charged was committed.

This issue was largely disposed of by this court in *State ex rel. Banks* v. *Hamilton Superior Court,* (1973) 261 Ind. 426, 304 N.E.2d 776. In that case, the Appellant and co-defendant Cade sought a writ of prohibition ordering the discharge of the petitioners on the basis of Ind. R. Crim. P. 4(A). In denying the petition filed by the Appellant and his then co-defendant we wrote: "A change of venue for one of two or more jointly charged defendants is a change of venue for all, absent a showing of prejudice by a defendant." 261 Ind. at 427, 304 N.E.2d at 776.

The Appellant has not shown any prejudice encountered by the original change of venue from Marion County to Hamilton County. Given the validity of that change, we need only consider whether another change should have been granted upon the Appellant's motion. Ind. R. Crim. P. 12 is explicit on this question: "the defendant shall be entitled to only one [1] change from the county."

The rationale for this limitation, as well as the time limits for an application for a change of judge or change of venue from the county also prescribed in Ind. R. Crim. P. 12, are amply illustrated by this case. At the time of his alternative motion, the proceedings against the Appellant had progressed for a number of months. Hearings on motions to suppress, motions to reopen evidence on motions to suppress, and motions for discovery, had been concluded. The Appellant was ready to go to trial. A change of venue at this point would result in a tremendous duplication of judicial time and effort.

The Appellant also urges this court to reconsider its ruling in *State ex rel. Banks* v. *Hamilton Superior Court, supra,* regarding the Appellant's motion for discharge. We remain

unpersuaded that our decision in that original action was incorrect.

## V.

The next contention of error is this: "The trial court erred in permitting the State to discuss during voir dire examination, over defendant's objections, the crime of attempted burglary. Defendant was not charged with said crime; said crime is not a lesser-included offense of first degree burglary." This argument is confusing as well as unpersuasive.

The Appellant was not tried for first degree burglary. He was tried for first degree murder. That crime is in part defined as "Whoever kills a human being either purposely and with premeditated malice or while perpetrating or *attempting* to perpetrate rape, arson, robbery, or burglary. . . ." (emphasis added) Ind. Code § 35-13-4-1 (Burns 1975). "Attempted burglary" was thus discussed at voir dire not as a separate crime but as one element of the charge of which the Appellant stood accused.

The Appellant has quoted one question posed by the prosecutor as illustrative of the objectionable line of questions. The question quoted is not very well phrased and, taken out of context, is indeed rather confusing. Our review of the record, however, reveals that the following question was more typical of those asked:

"Do you understand that that statute, as written, applies to at least with respect to this case, two different types of first degree murder? One type is what we commonly call felony murder, that is, with reference to this particular case the statute says a killing accomplished in the commission of or attempt to commit a burglary, as worded by the statute, and further goes on to discuss what we call here premeditated murder, and you understand that the State has charged this defendant with both these particular offenses?"

The State's inquiry into prospective jurors' understanding of the crime charged was proper. Moreover, the trial court ruled that any resulting confusion regarding "attempted bur-

glary" could be resolved through instructions by the court. We agree.

In a separate allegation of error, the Appellant contends that the trial court erred in overruling a defense motion for mistrial based upon the prosecution voir dire questioning just discussed. The granting of a mistrial is within the sound discretion of the trial court. *Lolla* v. *State*, (1973) 260 Ind. 221, 294 N.E.2d 798. Needless to say, if the objected to questioning was proper, then it was not an abuse of discretion to overrule the motion for mistrial.

## VI.

The next issue presented is "whether or not the Court erred in denying defendant full pre-trial discovery." This issue stems from an order for pre-trial discovery which reads in part as follows:

"* * * the Court, being duly advised, now orders the State of Indiana as follows:

1. To produce to each defendant a list of the names and addresses of the witnesses the State of Indiana anticipates it may use in prosecution of this cause of action;

2. To produce to each defendant copies of any statements, signed or unsigned, made by such defendant;

3. To produce to each defendant any recorded conversations of that defendant with any representative of the State of Indiana;

4. To produce to each defendant a copy of any memorandums and/or summaries of oral conversations had between that defendant and any representative of the State of Indiana;

5. To produce to each defendant any evidence that is exculpatory of that defendant;

6. To produce to each a list of the demonstrative scientific evidence that it anticipates using at the trial of this cause, including ballistics, fingerprints, clothing and/or other material tests, footprints, plaster casts and blood analysis, with each defendant given opportunity to have independent analysis or testing thereof under conditions agreed upon between each defendant and the State of

Indiana or under conditions as determined by the Court upon further order;

7. To produce to each defendant a copy of the D.H.C.:

8. To produce to each defendant a list of dates, times and places of any line-up of any such defendant.

All items except Item 2 shall be provided on or before April 9, 1973.

Item 2 shall be provided on or before April 6, 1973.

In addition, the State of Indiana is ordered to be prepared to produce a copy of any and all testimony given before the Marion County Grand Jury by any person the State of Indiana plans to call as a witness in the prosecution of this cause of action to be given to each defendant upon the laying of a proper foundation for such request.

In addition, the State of Indiana is ordered to be prepared to produce a copy of any written statements or a copy of any memorandums of any oral statements given to any representative of the State of Indiana by any persons the State of Indiana anticipates calling as witnesses in the prosecution of this cause of action, to be given to each defendant upon the laying of the proper foundation for such a request."

The trial of this cause was originally set for April 23, 1973. On April 19, 1973, the Appellant filed a Motion for Discharge and Sanctions alleging that all the State had produced was a list of twenty-three witnesses bearing the notation that all the persons listed would not necessarily be called. That same day the State filed as its Answer to Defendant's Motion to Produce the State's witnesses list. The trial court denied the Appellant's motion, continued the case and reset trial for June 4, 1973.

On April 24, 1973, the State filed with the trial court a Supplemental Answer to Defendant's Motion to Produce which apparently completed the pre-trial discovery as ordered. A receipt filed by counsel for then co-defendant Cade indicated that all the items of discovery ordered were received by him between April 12, 1973, and April 23, 1973. Nothing in the record or the brief of the Appellant indicates that counsel for the Appellant did not receive full discovery in the same fashion.

Trial was delayed still more by hearings on various pre-trial motions by the Appellant and his ten co-defendants. The trial was continued "on a day-to-day basis until the conclusion of the pre-trial motions. . . ." A Supplemental List of Witnesses consisting of one person was filed by the State on July 6, 1973. A Supplemental List of Evidence was filed on July 10, 1973.

On July 24, 1973, trial was continued and reset for October 1, 1973, on the motion of the Appellant and then co-defendant Cade. It was their position, and the trial court agreed, that trial should be continued until the issues raised in the original action already referred to in this opinion were resolved by this court. On September 20, 1973, the State filed a Supplemental List of Scientific and Demonstrative Evidence. As with the other items of discovery filed, there is no allegation by the Appellant that he did not receive this list.

With all this in mind, it is difficult to understand the argument presented by the Appellant that he was denied full discovery. It is suggested that the trial court should have fixed a day certain for the production of the items requested and should have prohibited the State from using witnesses or evidence at trial which were not identified or produced by that date. The record, however, reveals that the response of the State after the Appellant's Motion for Discharge or Sanctions was quite prompt. There is no reason to believe the later supplemental lists could have been provided any sooner. The record is replete with delay which was caused by the Appellant himself.

The fact that the Appellant caused much delay himself brings out the primary weakness of the Appellant's contention. He has not shown that he was in any way harmed. It has not been shown that the trial court's discovery order was insufficient or that discovery failed to reveal any of the evidence used at trial. As discussed before, it has not been shown that delay prejudicial to the Appellant was caused by the State.

It is the burden of an Appellant to show that an error complained of was prejudicial. *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351 and cases cited therein. The Appellant's argument on this issue fails to meet this burden.

## VII.

On November 13, 1973, the Appellant filed with the trial court a verified Motion for Change of Venue from the Judge. This motion alleged that the trial judge was prejudiced against both the race of the Appellant and the Appellant's defense, and that the Appellant had just learned of this prejudice.

A hearing was conducted on this motion on November 15, 1973. The Appellant was the only witness. He asserted that he believed that the trial court was prejudiced on the basis of his personal observations and on the basis of statements made to him by fellow prisoners. The Appellant contends that the trial court erred in denying this motion on November 16.

Under Ind. R. Crim. P. 12, which governs application for change of judge, "the ruling of the court may be reviewed only for abuse of discretion." The Appellant apparently argues that the trial court abused its discretion here because no counter-affidavits were filed by the State, and because the State presented no evidence at the hearing. We do not agree.

"It is of course within the discretion of the trial court to question the credibility of an application whose veracity has been attacked by the prosecution. It may also be within the courts (sic) discretion to question the credibility of an uncontroverted application, but this should be done only after affording the petitioner a hearing or other opportunity to support his application with additional evidence." *Hanrahan* v. *State*, (1968) 251 Ind. 325 at 334, 241 N.E.2d 143 at 148. A hearing was held in this case. The affidavit filed by the Appellant consisted primarily of his personal opinions and unsupported hearsay. The Ap-

pellant has not shown clear abuse of discretion by the trial court in its denial of the motion.

## VIII.

The next allegation of error presented by the Appellant is that the trial court erred in denying a Motion for Continuance filed by the Appellant on November 13, 1973, and in denying a Motion to Reconsider the Denial of Petition for Continuance filed on November 19. The Appellant concedes that, except for statutory grounds, the granting of a continuance is within the sound discretion of the trial court. *Carlin* v. *State,* (1970) 254 Ind. 332, 259 N.E.2d 870. The Appellant contends however, that the trial court abused its discretion in this case.

The basis for these motions was that this court had not yet handed down an opinion in the original action instituted by the Appellant and then co-defendant Cade. Previous continuances had been requested and granted on this basis. As mentioned before, on July 24, 1973, trial was continued and reset for October 1. On October 1, trial was again continued until November 19, 1973. The trial court, however, apparently felt that further delay was unwarranted. We see no abuse of discretion in this decision.

The Appellant asserts that the denial of these motions denied him sufficient time to prepare his defense. The Appellant was permitted to proceed as a pauper on November 16, 1973, the same day on which his Motion for Continuance was denied. Counsel for the Appellant was authorized to employ investigative assistance that same day. While trial was set for the following Monday, November 19, we do not see how the preparation of the defense was burdened. While counsel for the Appellant was designated pauper counsel on November 19, he had served as the Appellant's counsel throughout the proceedings against him. One may well ask what could have been done during another continuance that could not have been done in the several continuances which preceded it.

Once again, we return to the fundamental requirement that an appellant must show that he was prejudiced by an alleged error. *Hester* v. *State, supra.* The argument presented to us is silent on what the Appellant would or could have done if the requested continuance was granted. The brief of the Appellee appropriately points out that the Appellant did not begin presenting his evidence at trial until December 21, 1973. He thus had over a month to investigate and prepare before the presentation of his case. Moreover, nowhere in the Appellant's argument is it alleged that investigation would have disclosed facts not already available to the Appellant through pre-trial discovery.

The Appellant also points out that a continuance could have been conveniently granted, since counsel for his then former co-defendant indicated that he was ready to go to trial immediately. This, of course, does not answer the question of whether the Appellant was prejudiced. In addition, it should be noted that the Appellant's former co-defendant (Cade) was charged and tried upon a theory which maintained that the Appellant had been the burglar who actually shot the deceased. It is reasonable, though it is not necessary, to conduct the trial of a principal before that of his confederate.

## IX.

On December 26, 1973, the Appellant moved for a mistrial on the grounds of trial judge misconduct. It is urged that the denial of this motion was reversible error. The argument presented is insufficient to support this proposition.

The allegations of misconduct contained in the argument of the Appellant are for the most part vague and unsupported by references to the record. The only specific charge presented is that "the trial judge advised or suggested to the prosecutor that he talk with and perhaps make one of the defense witnesses a witness for the State." In support of this allegation the Appellant quotes a portion of the record in which his counsel initially made the assertion:

". . . I would like for the record to show that the Court had called a recess and indicated to the Prosecutor that he might want to talk to Mr. Beaver concerning the matter about which he testified to see if there was anything else that he would want to bring out or that could be brought out through it, and during the course of these proceedings from time to time various objections have been made to testimony and various objections have been made to exhibits that have been offered by Defendant Banks, some of which from time to time have been sustained and the Court has off the record suggested to the Prosecutor how he might proceed to place the case in proper foundation for the receipt of those and that as how the objection might be cured, and that has been the flavor of these proceedings from time to time and the atmosphere within which my client has been tried, and that the Court has, in my judgment, by her conduct this morning, by her conduct from time to time throughout these proceedings placed herself more in the realm of the prosecution's advocate or quasi-advocate rather than an impartial judge of proceedings in which a person is on trial for his life.

The Court: I believe that your statement as far as my comment is basically accurate. I think what I said was that I asked Mr. Irwin of the Prosecutor's Office did he want the opportunity to talk to Mr. Beavers and that if he did I would ask you if you had an objection to doing that; that the Court had its own monkey on its back, if he wanted to avoid such a monkey by the examination he would have the opportunity to talk if you had no objection thereto."

The Appellant suggests that the record "speaks for itself as to the obvious misconduct on the part of the trial judge." This is hardly the case. The portion of the record quoted above suggests that it came to the attention of the trial court that the prosecution might wish to call this witness and, if so, the court would ask counsel for the defense if he had any objection to the prosecutor talking to the witness. Given the controversial nature of this witness, (he was the polygraph expert already discussed) the initiative of the trial court here does not appear improper.

This specific incident is offered as but an example of the alleged "judicial misconduct" which occurred. "The misconduct or improper conduct of the trial judge and the prosecutor in getting certain pieces of evidence into the record and before the jury went undetected by

defense counsel until late in the trial proceedings. It was only by chance that the scheme became known to defense counsel. . . .". This scheme may be known to defense counsel, but it has not been shown to this court. The argument of the Appellant presents only assertions. We find no facts upon which a resolution of this issue can be based. In essence, we are asked to review judicial conduct without knowing what that conduct actually was. This we obviously cannot do.

## X.

The final contentions of the Appellant challenge certain instructions given by the trial court to the jury and challenge the refusal of the trial court to give other instructions tendered by the Appellant. The first instruction challenged is Court's Final Instruction No. 5, which consisted of the indictment which charged the Appellant. The Appellant contends that it was erroneous to read the names of the other individuals also charged in the indictment. This argument is without merit.

The Appellant cites in support of this contention *Bruton* v. *United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. That case held inadmissible an extra-judicial confession made by a co-defendant who did not testify at the joint trial. It is asserted that the "logical extension of the *Bruton* rule dictates that where there are separate trials, the defendant shall not be linked with the co-defendants in any way with the possible exception of cross-examination of the defendant."

Where the possibility exists as in *Bruton* that co-defendants have made serious statements implicating other co-defendants and such statements will be introduced as evidence at trial, the remedy to be applied is that of separate trials. *Baniszewski* v. *State*, (1970) 256 Ind. 1, 261 N.E.2d 359. This was done in the case of the Appellant. The *Bruton* and *Baniszewski* cases concern the admission into evidence of confessions by co-defendants which inculpate the accused. They do not concern the admission of evidence which shows that the accused committed the crime with con-

federates. Such evidence is admissible and it was not prejudicial to the Appellant to have the trial court read to the jury an indictment which merely alleged what would later be shown by the evidence at trial.

The Appellant next challenges Court's Final Instruction No. 15:

"If you should believe from the testimony in this case that any witness or witnesses has or have wilfully and intentionally testified falsely to any material matters or facts in this case, intending by such false testimony to mislead and deceive as to the truth in the case, you may under such belief disregard the whole or any part of the testimony of such witness or witnesses if, in your opinion, you are justified in so doing."

This instruction was approved in *Kleihege* v. *State*, (1934) 206 Ind. 206, 188 N.E. 786. In that case this court felt that the jury was not misled by the use of the word "wilfully" instead of "knowingly." We are not persuaded differently now. This court also found that an additional instruction informed the jury as to the effect of corroborating evidence and that the two instructions read together thus correctly interpreted the law applicable to the case. The situation is the same here. Court's Final Instruction No. 14 properly instructed the jury on the weighing of conflicting testimony, its province to believe whomever it chooses, and the principle that all evidence should be reconciled, if possible, upon a theory that all witnesses spoke the truth. We believe that, when the instructions are read together, the jury was properly instructed.

Also objected to were Court's Final Instructions Nos. 30, 31 and 32. Instruction No. 30 discussed lesser included offenses of Count II of the Appellant's indictment. Instruction No. 31 concerned the form of the verdict to be returned by the jury under Count I of the indictment. Instruction No. 32 concerned the form of the verdict to be returned regarding Count II. The Appellant contends that each of these instructions was framed so as to presume the Appellant guilty, and should have been framed

so as to presume him innocent. We disagree. We see no way to instruct a jury on possible verdicts except by the phrasing used here: "If you shall find the defendant guilty . . . If you shall find the defendant not guilty. . . ." We see no presumption of guilt in this framing. Moreover, the trial court instructed the jury on the presumption of innocence in Court Instructions Nos. 11 and 12. All instructions are to be read together. *Cockrum* v. *State*, (1968) 250 Ind. 366, 234 N.E. 2d 479.

The Appellant next draws our attention to Court's Final Instruction No. 35:

> "A person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it; thus, if a person combines and confederates with others to accomplish an illegal purpose, he is criminally liable for everything done by his confederates which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the original design as common plan."

The Appellant contends that "the instruction did not properly state the law in that said instruction failed to take into consideration the concept of abandonment or termination of the alleged conspiracy." This was not necessary. The Appellant was not charged with conspiracy, nor did this instruction concern that crime. This instruction correctly states the law regarding the criminal liability of confederates. *Atherton* v. *State*, (1967) 248 Ind. 354, 229 N.E.2d 239; *Liford* v. *State*, (1965) 247 Ind. 149, 210 N.E.2d 366.

The final instruction of the trial court questioned by the Appellant is Court's Final Instruction No. 42:

> "The crime of burglary is defined by the statutory law of the State of Indiana, which provides:
> Whoever breaks and enters into any dwelling house or other place of human habitation with the intent to commit any felony therein shall be guilty of burglary.
> The offense of burglary as so defined requires three elements:
> 1. That there is a breaking and entering;

2. That the building broken into and entered be a dwelling-house or other place of human habitation;

3. That the person who breaks into and enters the dwelling-house or other place of human habitation do so with the intent to commit a felony therein.

Each of the three elements must be present for the offense of burglary to be committed. A breaking and entering into a dwelling-house or other place of human habitation is unlawful, but unless the person so acting has the intent to commit a felony therein the offense he commits is not burglary."

The Appellant contends that this instruction was erroneous because the word "specific" was not inserted before the word "intent." We do not believe that the use of the word "specific" was necessary here to convey to the jury the definition of burglary. It is not contained in the statutory definition of the crime. Ind. Code § 35-13-4-4 (Burns 1975). While the instruction does not use the word "specific", it clearly and correctly defines the specific intent required. We can find no error.

The Appellant also contends that the trial court erred in refusing to give certain instructions tendered by the defense. The first such instruction was Defendant's Proposed Instruction No. 1:

"To find the presence of the third element of the offense described in count 1 of the indictment, you must necessarily find the defendant Walter Banks guilty of burglary. If you find that the evidence presented in this cause has not proven beyond a reasonable doubt that the defendant Walter Banks committed the crime of burglary, then you cannot return a verdict of guilty under count 1 under the indictment."

Court's Final Instruction No. 44 states this same principal of law in virtually the same language. It is not error to refuse an instruction adequately covered by other instructions which are given. *Fuller* v. *State*, (1973) 261 Ind. 376, 304 N.E.2d 305.

Defendant's Proposed Instruction No. 2 was also refused:

"The fact that a person indicates that he was 'burglarizing'

does not mean that that person has committed the offense of burglary in the eyes of the law."

As noted above, the crime of burglary was correctly defined in Court's Final Instruction No. 42. The proposed instruction stated the obvious and we can find no error in the trial court's rejection of it.

The Appellant also contends that Defendant's Proposed Instruction No. 3 was erroneously refused. That tendered instruction reads as follows:

"I instruct you that the presence or absence of accessory shall not be considered in making your determination of the charge of premeditated murder and if there is any reasonable doubt as to whether or not the Defendant, Walter Banks, shot Lucille Hosmer, you must find the Defendant 'Not Guilty' of premeditated murder."

The Appellant contends that "the trial court committed reversible error by refusing to instruct the jury that the question of accessory was inapplicable to the offense in which defendant Banks was charged." It is unrealistic to expect a trial court to instruct a jury on every fact which does *not* have a bearing upon a particular crime. Court's Final Instructions Nos. 8, 26 and 27 instructed the jury on premeditated murder. Once again, it is not error to refuse to give an instruction the substance of which is covered in other instructions which are given. *Fuller* v. *State, supra.*

Defendant's Proposed Final Instruction No. 4 was also properly refused. That instruction concerned the State's failure to produce witnesses listed on the State's witnesses list. Because the Appellant possessed a copy of this list and could have called the persons listed as his own witnesses, there was no error here. *Gatchett* v. *State,* (1973) 261 Ind. 109, 300 N.E.2d 665.

Finally, the Appellant challenges the trial court's rejection of Defendant's Tendered Instruction No. 5:

"I instruct you that Walter Banks is not charged with an attempted burglary, so even if you find that Walter Banks attempted a burglary yet there exists reasonable doubt in your minds as to whether or not Walter Banks committed

a burglary, you must return a verdict of not guilty on count one of the indictment."

As noted before, the definition of murder in the perpetration of a felony reads in part ". . . . while perpetrating or attempting to perpetrate. . . ." Ind. Code § 35-13-4-1 (Burns 1975). "The Appellant cannot predicate reversible error upon the refusal of the trial court to give an erroneous instruction." *Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275 at 280.

Finding no merit in the multiplicity of errors alleged by the Appellant, we affirm the judgment of the trial court.

Givan, C.J., DeBruler, J., concur; Prentice, J., concurs in result with opinion in which Hunter, J., concurs.

OPINION CONCURRING IN RESULT

PRENTICE, J.—I concur in the result reached by the majority.

Upon Issue II, I do not agree that a waiver of objection to the revelation that a polygraph test had been given would not ordinarily be a waiver of objection to the admission of the results of such test. It appears to me that to open the door for a peek at such information and then to slam it shut without a full view of the evidence could serve no useful purpose and might well invite much mischief. Inasmuch as this occurred in this case in a hearing upon the voluntariness of the confession and in the absence of the jury, I conclude that it was not error in this case.

Upon Issue IV, I depart from the majority view to the extent that it might imply that one of two or more jointly charged criminal defendants may waive his co-defendant's constitutional rights to be tried in the county in which the offense was committed. In this case, however, the defendant acquiesced in the change of venue by his failure, thereafter, to take timely steps for a separate trial and further by proceeding in the Hamilton Circuit Court, without objection, after the change had been perfected.

Hunter, J., concurs.

NOTE.—Reported at 351 N.E.2d 4.