Robert Earl BADELLE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1179S306.

Supreme Court of Indiana.

June 13, 1983.

Patrick E. Chavis, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Robert Earl Badelle was found guilty of murder by a jury on June 25, 1979. The Marion Superior Court subsequently sentenced him to sixty years imprisonment. Appellant now directly appeals and raises what we have consolidated into the following five issues:

1. whether the trial court erred by denying Appellant's Motion for a Continuance;

2. whether the trial court erred by granting the State's Motion to Suppress the testimony of certain witnesses and by excluding their statements from admission into evidence;

3. whether the trial court erred by allowing the State to question Witness Highbaugh in reference to his suspension from the police force;

4. whether the trial court erred by permitting testimony pertaining to Appellant's prior unrelated criminal activity; and

5. whether the cumulative effect of these alleged errors denied Appellant fundamental fairness and due process of law.

The facts adduced at trial show that on December 5, 1977, Robert Kannapel, Sr., and his son, Robert, Jr., were working together in a gasoline service station located at 16th and Meridian Streets in Indianapolis. At approximately 3:00 p.m., a man subsequently identified as Appellant Badelle walked into the station to get out of the drifting snowfall and presumably to wait on a ride. Despite the station's policy to the contrary, the Kannapels allowed Badelle to remain inside the front office area. During the next three hours, Mr. Kannapel, Sr., repaired automobiles in the station's service bay area while his son was in and out of the front office attending to the outside gasoline pumps. Several people passed through the station during this period and noticed Badelle loitering. At approximately 5 p.m., neighbor Joe Harris stopped at the station to visit. At approximately 6:00 p.m., Mr. Kannapel, Jr., left the station to make the station's daily bank deposit before going home. After his departure, Badelle asked Harris to call a cab for him. Harris looked up the number and gave it to Mr. Kannapel, Sr., who proceeded to place the call. Badelle thereupon went into the back office area where Mr. Kannapel, Sr., was. A scuffle ensued. Still in the front office area, Harris heard a gunshot and Kannapel's request for an ambulance. When Harris started into the station's rear area, Badelle confronted him and said that he would be shot if he continued any further. At that time, Harris observed Badelle holding a long-barrelled, silver-colored pistol. Harris left the station and called the police. Vincent Carrol drove up to the station's gasoline pumps just as Harris was leaving and watched another man he described as looking like Badelle leave the station carrying a long-barrelled, silver-colored pistol in his hand. Mr. Kannapel subsequently died from his gunshot wound.

### I; II

■ Issues I and II concern the statements and proposed testimony of several witnesses by which Appellant hoped to demonstrate that this murder was committed by someone other than himself. On June 2, 1979, and just prior to the trial of this cause, Linda Robinson telephoned police Detective Thomas Minor to inform him that she had overheard her brother-in-law and a friend of his discussing a shooting. The brother-in-law was Jeffrey Keys, married to Linda Robinson's sister, Jacqueline. The friend was James Walter Cowherd. On June 3, police contacted Deputy Prosecutor Whitney to inform him of this conversation. On June 4, the State asked for a one-day continuance to investigate this new information. The continuance was granted. Whitney and the police interviewed Linda Robinson, Jacqueline Keys, Jeffrey Keys and James Cowherd that evening and on June 5 asked for a further continuance. The additional request was granted and the cause was set for trial on June 18, 1979. Appellant's counsel was provided full discovery of the information gathered from these individuals including where they might be located. Appellant's counsel nonetheless complained to the trial court that he was prevented from interviewing the four witnesses at the prosecutor's office on June 4 because the four were still being questioned by the State when he arrived and he did not remain long enough to talk with them. The State was ordered to produce James Cowherd, Jacqueline Keys and Jeffrey Keys on June 16, 1979, to allow defense counsel an opportunity to interview them. Apparently these witnesses were not produced at that time. The trial court subsequently ordered these witnesses produced at a conference scheduled for June 19, 1979, but the State was unable to produce Jeffrey Keys or James Cowherd at that time. The cause apparently was continued again for one day to allow the Indianapolis police an opportunity to locate Jeffrey Keys and James Cowherd. On June 20, 1979, the trial court conducted a hearing to ascertain the essentiality of James Cowherd. At this time the trial court was informed that the police had previously conducted a polygraph examination of Cowherd and determined that he was not involved in the instant crime. Appellant moved for an additional continuance to allow him to interview Cowherd but was denied the continuance.

Linda Robinson and Jacqueline Keys informed the police that they overheard Cowherd refer to a shooting at a filling station which they thought might have been the instant crime. Jacqueline Keys specifically informed that she heard Cowherd's conversation but never heard Cowherd actually say that he shot a man at 16th and Meridian Streets. Cowherd's statement allegedly was made to Jeffrey Keys at the Keys' home. It appears that if such a statement was indeed made, it may well have been made jokingly or while Cowherd was under the influence of alcohol. Cowherd subsequently denied making the statement and denied being involved in this crime. The State moved to suppress the statements of Linda Robinson, Jacqueline Keys and Jeffrey Keys because said statements amounted to a third party confession which is not a recognized exception to the hearsay rule in Indiana. The trial court granted the State's motion to suppress the testimony of these witnesses and refused to allow Linda Robinson to testify when Appellant called her to the stand. Appellant admits that the trial court's ruling was proper pursuant to this Court's holding in *Taggart v. State,* (1978) 269 Ind. 667, 382 N.E.2d 916, but urges us to overrule *Taggart. See also: McPherson v. State,* (1978) 178 Ind.App. 539, 383 N.E.2d 403. In *Taggart,* we held that our Indiana precedent against the admissibility of third party confessions is compatible with *Chambers v. Mississippi,* (1973) 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. In the instant case, Cowherd's alleged confession was oral, factually uncertain and subsequently denied by him. The trial court therefore properly found Cowherd's alleged statement to be inherently untrustworthy and the statements of Linda Robinson, Jeffrey Keys and Jacqueline Keys to be inadmissible hearsay. Furthermore, none of these statements would have excluded Appellant from being involved in the crime. The trial court accordingly acted properly when it refused the testimony of Linda Robinson, Jeffrey Keys and Jacqueline Keys. Since any further discovery of Cowherd would have gained nothing beneficial to Appellant's defense in view of these circumstances, the trial court properly denied Appellant's continuance.

The various statements of Linda Robinson, Jacqueline Keys and Jeffrey Keys made to Detective Morgan were denominated Exhibits MM, NN, OO, PP, and QQ. It appears that on Friday, June 22, 1979, at the end of that day's trial proceedings, Detective Morgan notified the State that he had not yet been called to testify although he intended to leave on vacation the following Monday. In order to accommodate Morgan's vacation plans, the State and Appellant stipulated as to the existence of said statements and that they were properly taken, but refused to stipulate as to their truthfulness. When Appellant offered the statements into evidence sometime during the following week, the State objected and the trial court excluded them. Appellant now contends that since these statements offered as Exhibits had been stipulated into evidence, the trial court improperly excluded them. It is clear from an examination of the transcript, however, that the parties made their stipulations to accommodate Detective Morgan by removing his need to be in court to sponsor the Exhibits. The trial court found that the State's stipulation did not go to the truthfulness of the contents of the statements and that the State therefore could object to their admission on hearsay grounds. In view of the circumstances presented here we find that the trial court did not err by refusing to admit the statements comprising Exhibits MM, NN, OO, PP, and QQ.

### III

■ Appellant claims that the trial court reversibly erred by allowing the State to question defense witness Detective James Highbaugh about Highbaugh's suspension from the police force. Highbaugh was suspended for certain improper conduct during his investigation of this case. On May 24, 1979, Appellant filed a written Motion *in Limine* which in part sought to:

"suppress any and all testimony and/or evidence regarding the filing of interdepartmental charges against Det. Sgt.

James Highbaugh, a defense witness, the findings on said charges and his imposed suspension, and the nature of his current assignment and duties."

On cross-examination, the State asked Highbaugh about his suspension incidental to his investigation of the instant case. Appellant thereupon asked for and was granted an immediate hearing outside of the jury's presence. During said hearing, Appellant objected to the State's question and moved for a mistrial alleging that the State deliberately violated Appellant's pre-trial Motion *in Limine*. The State argued that the trial court had indicated that Appellant's pre-trial Motion *in Limine* regarding Highbaugh's suspension was granted and in effect only until the State produced a record of that suspension proceeding or the individuals responsible for that proceeding. The State suggested that it had complied with the pertinent trial court orders. The trial court noted for the record that it had previously ruled to deny any cross-examination of Highbaugh concerning his disciplinary proceedings unless Appellant's discovery motion was complied with. The trial judge then *sua sponte* recalled that on June 21, 1979, the State interrupted the trial to advise that police Captain Owens had appeared and produced a three-page document dated May 11, 1979, and entitled "Indianapolis Police Department, Interdepartmental Communication." The subject of said document was Officer Highbaugh's disciplinary hearing. The trial court noted that at the end of that day, the statement was made available to both the trial court and to the defense. On this basis, the trial court overruled Appellant's Mistrial Motion and Appellant's objection to Highbaugh's testimony regarding his suspension. Claiming surprise, Appellant's counsel requested a continuance to prepare himself to go into Highbaugh's disciplinary proceeding. The continuance was refused and Highbaugh's cross-examination was continued.

Appellant now urges that the case of *Banks v. State,* (1976) 265 Ind. 71, 351 N.E.2d 4, *cert. denied,* 429 U.S. 1077, 97 S.Ct. 821, 50 L.Ed.2d 797, should control here against the State. *Banks* involved Officer John Larkins and Detective James Highbaugh. The appellant in *Banks* sought to present evidence showing a pending investigation into certain alleged misconduct on the part of the two officers. This Court held:

"'The mere fact that a witness has been arrested or a charge placed against him is not evidence which may be considered as affecting his credibility, . . .'

30 I.L.E. *Witnesses* § 194 at 159 (1960). The fact that officers Highbaugh and Larkins were accused of misconduct and were the subjects of investigation was not admissible into evidence to impeach them as witnesses."

*Banks,* 265 Ind. at 81, 351 N.E.2d at 11. The misconduct of *Banks* is not similar to that considered by the trial court in the instant case. In *Banks,* the trial court ruled upon evidence of misconduct which did not directly involve the case then being tried by that trial court. In the instant case, however, Highbaugh's misconduct pertained to his investigation of the instant case. This Court has explained:

"The *Hensley* rule [*Hensley v. State,* (1971) 256 Ind. 258, 261, 268 N.E.2d 90, 92] on the impermissibility of questioning about prior misconduct, other than convictions, applies if such evidence is in no way connected with the crime charged and is not introduced in an attempt to show a scheme or plan, but solely for the purpose of discrediting the appellant as a witness."

*Jackson v. State,* (1977) 267 Ind. 62, 66, 366 N.E.2d 1186, 1189, *cert. denied,* 435 U.S. 975, 98 S.Ct. 1623, 56 L.Ed.2d 69. This Court also has held:

"The credibility of a witness who has testified is always in issue, hence evidence which fairly reflects thereon is relevant. The trial judge has a recognized discretion to control such cross-examination in order to prevent the waste of time or the creation of undue prejudice; but generally, liberal cross-examination is allowed for the purpose of disclosing a witness' bias. McCormick's Handbook of the

Law of Evidence § 29, at 58–59 (2d Ed. 1972).

We have stated in the past that evidence pertaining to bribery, threats and other influences which reflect upon the credibility of a witness should be given to the jury. *E.g. Barnes v. State,* (1978) 269 Ind. 76, 378 N.E.2d 839; *Adler v. State,* (1967) 248 Ind. 193, 225 N.E.2d 171. Moreover, such evidence should not be viewed as being collateral in nature. *Clark v. State,* (1976) 264 Ind. 524, 348 N.E.2d 27; *Hunter v. State,* (1977) 172 Ind.App. 397, 360 N.E.2d 588; McCormick's Handbook of the Law of Evidence § 41, at 81 (2d Ed.1972); Underhill's Criminal Evidence § 244, at 769 (6th Ed. 1973). The question in this case was designed to demonstrate the witness' feelings for the defendant, her husband, and the extent to which she would protect him. It was relevant to her credibility and, therefore, proper. *Hunter,* 172 Ind. App. at 417, 360 N.E.2d at 601."

*Hardin v. State,* (1981) Ind., 414 N.E.2d 570, 572. Since Highbaugh's misconduct stemmed from his personal investigation of this case and as such was directly related to the testimony he was capable of giving about this crime, the trial court properly permitted Highbaugh to be cross-examined and properly found that evidence of his misconduct could be used to attack his credibility. Furthermore, Appellant was allowed to rehabilitate Highbaugh's credibility by questioning him about other totally unrelated criminal investigations which he had conducted and for which he had received commendations. There is no error presented by this issue.

## IV

During Appellant's trial, Charles Reedus testified that Appellant possessed a handgun in the fall of 1977 and discharged said gun at Reedus' place of business. Appellant now contends that Reedus' testimony should not have been allowed into evidence as it revealed the commission of another criminal act, the evidence of which is generally inadmissible unless introduced to show an accused's intent, motive, identity, guilty knowledge or common scheme or plan. Appellant specifically claims that Reedus' testimony does not come within any of the established exceptions to the general rule of inadmissibility.

The evidence adduced at trial showed that Witness Harris observed Badelle at the scene of the instant crime with a long-barrelled, silver-colored pistol in his hand. Although unable to positively identify Badelle as the man he observed coming out of the station from the service bay area, Carroll did testify that the man he saw bore certain of Badelle's characteristics and was carrying a long-barrelled, silver-colored pistol in his hand. Reedus' testimony established that sometime during the fall of 1977, Reedus saw Badelle at Reedus' place of business with a pistol in his possession. Reedus described the pistol as being approximately six inches long and shiny or chrome-like. The State claimed that Reedus' testimony was offered to show that the instrument used in the instant crime was owned or possessed by Badelle and that such evidence was admissible since it was relevant to a material fact in issue. We have held:

"It is always proper to show that the instruments used in a crime were owned or possessed by the defendant. Corroborative evidence of how and where he obtained such instruments is certainly proper."

*Byrd v. State,* (1965) 246 Ind. 255, 204 N.E.2d 651; *see also: Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. We have also held:

"[E]vidence that is admissible for one purpose is not rendered inadmissible simply because it coincidentally discloses or suggests other criminal activity."

*Armstrong v. State,* (1980) Ind., 412 N.E.2d 1207, 1208; *Samuels v. State,* (1978) 267 Ind. 676, 372 N.E.2d 1186.

The incidents testified to by Witness Reedus were very close in time to the instant crime and apparently involved the same weapon described by several witnesses to the instant crime. Accordingly, the trial court did not reversibly err by permitting Reedus' testimony.

## V

Finally, Appellant claims that the cumulative effect of the errors discussed above denied him of fundamental fairness and due process of law. In view of our finding no error in any of the above issues, we find no merit in this argument. Furthermore, Appellant did not raise this issue in his Motion to Correct Errors but raised it for the first time in this appeal. He therefore waived any consideration of this issue. *Hooks v. State,* (1980) Ind., 409 N.E.2d 618.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.